UNITED STATES, Appellee

v.

Christine N. THOMPSON, Private
U.S. Army, Appellant

No. 09-0145

Crim. App. No. 20060901

United States Court of Appeals for the Armed Forces

Argued November 10, 2009

Decided February 1, 2010

EFFRON, C.J., delivered the opinion of the Court, in which
BAKER, ERDMANN, and RYAN, JJ., joined.  STUCKY, J., filed a
separate opinion concurring in the result.


Counsel


For Appellant:  Captain Tiffany K. Dewell (argued); Colonel Mark
Tellitocci, Lieutenant Colonel Matthew M. Miller, and Major
Bradley M. Voorhees (on brief); Captain Melissa E. Goforth
Koenig.


For Appellee:  Major Adam S. Kazin (argued); Colonel Norman F.
J. Allen III and Lieutenant Colonel Martha L. Foss (on brief);
Captain Lynn I. Williams.


Military Judge:  Charles S. Walters


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Chief Judge EFFRON delivered the opinion of the Court.

The military judge presiding at Appellant's general court-martial granted Appellant's motion to dismiss the charges with prejudice, citing a violation of Appellant's speedy trial rights under Article 10, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 810 (2006). The Government appealed that decision to the United States Army Court of Criminal Appeals under Article 62, UCMJ, 10 U.S.C. § 862 (2006). The Court of Criminal Appeals reversed the military judge and remanded the case for further proceedings on the reinstated charges before the general court-martial. United States v. Thompson, No. ARMY 20060901, 2006 CCA LEXIS 479, at *18 (A. Ct. Crim. App. Nov. 30, 2008) (unpublished).

Following remand, the court-martial, consisting of the military judge sitting alone, convicted Appellant, pursuant to her pleas, of attempted larceny, three specifications of absence without leave, six specifications of larceny, and four specifications of forgery, in violation of Articles 80, 86, 121, and 123, UCMJ, 10 U.S.C. §§ 880, 886, 921, 923 (2006). The sentence adjudged by the court-martial and approved by the convening authority included a bad-conduct discharge and confinement for ten months.

The United States Army Court of Criminal Appeals affirmed the findings and sentence in a summary decision. United States

2

United States v. Thompson, No. 09-0145/AR

v. Thompson, No. ARMY 20060901 (A. Ct. Crim. App. Oct. 6, 2008) (unpublished).  On Appellant's petition, we granted review of the following issue:

> WHETHER THE ARMY COURT ERRED WHEN IT RULED THAT APPELLANT'S RIGHT TO A SPEEDY TRIAL UNDER ARTICLE 10, UCMJ, WAS NOT VIOLATED.

For the reasons set forth below, we affirm.

## I.  BACKGROUND

### A.  PRETRIAL CONFINEMENT AND CASE PROCESSING

1.  Chronology

The following summarizes the action on key dates pertinent to Appellant's motion to dismiss the charges:

- March 31, 2006:  Appellant placed in pretrial confinement.
- April 6, 2006:  Charges preferred against Appellant, consisting of:  (1) two specifications of absence without leave; and (2) two specifications of larceny related to the on-post theft of another servicemember's wallet.
- June 22, 2006:  Additional charges preferred, relating to the use and attempted use of a bank card from the wallet.
- June 23, 2006:  Investigation under Article 32, UCMJ, 10 U.S.C. § 832 (2006), ordered by the Special Court-Martial Convening Authority.
- June 30, 2006:  Article 32 hearing scheduled, but delayed pursuant to two defense requests.
- August 7, 2006:  Article 32 hearing held.
- August 9, 2006:  Article 32 investigation report completed.
- August 10, 2006:  Article 32 recommendation forwarded to the General Court-Martial Convening Authority.
- August 17, 2006:  General Court-Martial Convening Authority referral of charges for trial.
- August 18, 2006:  Service of charges on Appellant.

- August 18, 2006:  Appellant submits demand for speedy
  trial under Article 10, UCMJ, along with a motion to
  dismiss the charges for violation of speedy trial rights.
- August 23, 2006:  Arraignment and litigation of speedy
  trial motion.

2.  Litigation of the speedy trial motion

During the hearing on the speedy trial motion, Military
Police Investigator (MPI) Nicholas L. Calabris testified that he
and MPI Joseph W. Lomas conducted two related investigations
regarding Appellant.  The investigation by MPI Calabris focused
on the theft of bank cards that were in the wallet, a camera,
and a laptop.  The investigation by MPI Lomas addressed
unauthorized use of one of the bank cards.  The investigation
into the use of the bank card involved a joint investigation
with civilian law enforcement because the alleged uses of the
bank card occurred off-post.

MPI Lomas testified that he completed his witness
interviews on April 3.  He added that difficulties in
coordinating with local law enforcement investigators delayed
completion of the investigation into the off-post use of the
bank card.  He attempted to contact the local detective for
approximately thirty to forty days.  He was then informed by the
staff judge advocate's office that he did not need to transfer
any evidence to the civilian police because the military was
prosecuting all of the offenses.

MPI Calabris testified that his involvement in the investigation into the theft of the bank cards, camera, and laptop began on May 9, following deployment of the original investigator. He stated that the investigative file indicated that the first investigator had obtained statements from Appellant and the alleged victims by the end of the first week of April. He added that the file did not reflect investigative activity from April 6 until he took over the case on May 9. He explained that when he took over the investigation, he determined that he could complete the investigation after conducting a further interview of Appellant. On May 10, he concluded that he could not conduct a further interview after learning that Appellant had retained an attorney.

MPI Calabris testified that he did not close his investigation on May 10 because he was waiting for MPI Lomas to close his related investigation. He added that MPI Lomas kept his case open through May while attempting to contact local police for the purpose of sharing evidence and information related to the case.

MPI Lomas closed his investigation on June 2. After receiving evidence from the civilian police department on May 31, MPI Calabris made a subsequent but unsuccessful attempt to have further contact with the civilian officials. After not receiving a response, he closed his investigation on June 26.

The second trial counsel assigned to Appellant's case, Captain Daniel W. Dalrymple, testified that he inherited the case from the first trial counsel on May 15. He testified that in an effort to move the case towards trial, he took a number of actions, including conferring with other trial counsel and commanders about the case, drafting additional charges, conducting interviews, coordinating with local civilian prosecuting and law enforcement officials, and drafting a referral memorandum for the convening authority.

Appellant testified that she was confined in an isolation cell in the local county jail. Her cell had no windows or openings other than a food chute through which she received her meals. She had no cellmates, no access to television, and limited access to telephones. Her recreation time was restricted to once a week. She had access to a library, but not a law library. She was permitted to leave the county jail under escort for a brief period to attend her father's funeral, but she remained shackled at his funeral. She stated that she did not receive a chain of command visit while in pretrial confinement, but she did meet with her military and civilian counsel.

Following presentation of the evidence, the military judge granted the defense motion and dismissed all charges and specifications with prejudice. After the Government filed a

motion for reconsideration, the military judge held a further hearing, allowing the Government to present testimony from two additional witnesses in support of the motion for reconsideration.

The initial trial counsel assigned to the case, Captain Daniel Myers, who was replaced by Captain Dalrymple as his unit prepared for deployment, testified as to his workload during the period in which he had exercised responsibility for the case. He stated that he worked seventy to eighty hours per week during that period. He had three cases docketed for trial between March 31 and May 15, and he had a motions hearing for another case during this time period. He also spent four days on temporary duty assignment for a training course, adding that he had requested excusal from the training, but his request was denied. He took leave in conjunction with that trip, which was extended due to bad weather. He also spent approximately six to eight hours completing pre-deployment paperwork. With respect to Appellant's case, he stated that he had responded in early April to a defense inquiry as to the status of the investigation. He also made telephone calls and sent e-mails with regard to transferring Appellant to a different command and resolving a resultant pay problem. He stated that he did not proceed towards trial with the charges preferred on April 6 because he was waiting for the investigation of the other

7

suspected offenses to be completed to ensure that all offenses were prosecuted in one court-martial.

The Chief of Justice for III Corps, Lieutenant Colonel Steven M. Brodsky, testified that Captain Myers and the three other trial counsel serving in his office were "extremely busy" during the spring of 2006. He testified that Captain Myers worked on a particularly demanding court-martial at the time. Lieutenant Colonel Brodsky stated that he could not transfer any of Captain Myers's cases to another trial counsel because the office was understrength at the time and all his prosecutors were very busy.

Following the hearing, the military judge denied the Government's motion for reconsideration, concluding that the Government had failed to exercise reasonable diligence during the thirty-seven day period from April 8, 2006, through May 14, 2006 -- the day prior to the assignment of the second trial counsel, Captain Dalrymple, to the case. In denying the motion, the military judge reaffirmed his earlier ruling dismissing the charges with prejudice.

### B.  SUBSEQUENT PROCEEDINGS

The Court of Criminal Appeals reversed the military judge, vacated the dismissal of charges, and returned the case to the military judge for further proceedings. Thompson, 2006 CCA LEXIS 479, at *18. Before the court-martial reconvened,

Appellant entered into a pretrial agreement which included a
statement that she agreed to:

> [v]oluntarily waive all motions which can be
> waived under applicable statutes, caselaw, and
> public policy.  I further agree that, as of the
> date of this Offer, I have not been confined
> under unduly rigorous circumstances during
> pretrial confinement, nor have I been treated in
> a manner so excessive as to constitute punishment
> under Article 13 of the UCMJ.

During the ensuing plea inquiry, the military judge expressed
concern that the second sentence in the provision might render
the plea improvident.  He noted that while Appellant could waive
any motion for pretrial punishment credit under Article 13, the
factual assertions in the second sentence of the provision
appeared to be inconsistent with her prior testimony about
confinement and his findings of fact about the conditions of
confinement, which had not been overturned during the Article 62
interlocutory appeal.  Trial counsel agreed "that there's at
least a basis for an Article 13 credit motion," and that the
purpose of the sentence in the agreement was to memorialize
Appellant's waiver of the motion.  During further colloquy with
the parties, the military judge clarified that he would permit
Appellant to agree to waive any Article 13 motion, but that he
would treat the second sentence of the provision as being
"stricken out of your offer."  Appellant then agreed to waive
any Article 13 motion.  The military judge then accepted

Appellant's plea, and the trial proceeded to completion.  We now consider Appellant's Article 10 speedy trial claim on direct review.

## II.  DISCUSSION

### A.  SPEEDY TRIAL REVIEW UNDER ARTICLE 10

When a servicemember is placed in pretrial confinement, "immediate steps shall be taken" to inform the accused of the charges and to either bring the accused to trial or dismiss the charges.  Article 10, UCMJ.  "We have consistently noted that Article 10 creates a more exacting speedy trial demand than does the Sixth Amendment."  United States v. Mizgala, 61 M.J. 122, 124 (C.A.A.F. 2005) (citations omitted).  The procedural framework for analyzing Article 10 issues examines the length of the delay, the reasons for the delay, whether the accused made a demand for a speedy trial, and prejudice to the accused.  Id. at 129.  Although the procedural framework is derived from the Sixth Amendment test set forth by the Supreme Court in Barker v. Wingo, 407 U.S. 514 (1972), we have emphasized that because Article 10 imposes a more stringent speedy trial standard than the Sixth Amendment, "Sixth Amendment speedy trial standards cannot dictate whether there has been an Article 10 violation." Mizgala, 61 M.J. at 127; see id. at 129 (noting that the

military judge erred in limiting consideration of the procedural framework to a Sixth Amendment analysis).

We use the procedural framework to analyze Article 10 claims under the "immediate steps" standard of the statute and the applicable case law. See id. at 124. Article 10 does not require "constant motion, but reasonable diligence in bringing the charges to trial." United States v. Cossio, 64 M.J. 254, 256 (C.A.A.F. 2007) (citations and quotation marks omitted). "Short periods of inactivity are not fatal to an otherwise active prosecution." Mizgala, 61 M.J. at 127. In conducting our analysis, "we remain mindful that we are looking at the proceeding as a whole and not mere speed." Id. at 129. We conduct our review de novo, giving substantial deference to the military judge's findings of fact unless they are clearly erroneous. Id. at 127.

B. APPLICATION OF THE PROCEDURAL FRAMEWORK

The length of delay constitutes a "triggering mechanism" under Article 10. Cossio, 64 M.J. at 257 (holding that a 117-day period of pretrial confinement triggered the full Article 10 inquiry) (citation and quotation marks omitted). Under Cossio, the 145-day period Appellant spent in pretrial confinement is sufficient to trigger an Article 10 inquiry.

When ruling on Appellant's Article 10 motion in this case, the military judge noted that within the 145-day period, thirty-

11

nine days were a result of defense-requested delays, leaving 106 days attributable to the Government.  Within the 106-day period attributable to the Government, the military judge limited his conclusion regarding unreasonable delay under Article 10 to the thirty-seven day period between April 8, 2006, and May 14, 2006.

At trial, the prosecution asserted that the thirty-seven day period did not constitute unreasonable delay in light of: (1) the difficulties encountered by the military police in coordinating with the civilian detective, and (2) the heavy workload of trial counsel.  The military judge held that the Government's reasons for the delay were inadequate.  The military judge concluded that no meaningful investigation occurred during the thirty-seven day period.  The military judge noted, however, that some police activity occurred during this period, including "a furtive attempt to question a represented accused; and fitful, initially misguided, attempts to pass existing evidence between military and civilian authorities." The military judge rejected the Government's argument with regard to trial counsel's caseload, concluding that the Government's generalized claims of inadequate personnel did not constitute a legitimate reason for the delay.

The Court of Criminal Appeals held that the Government's justifications for the delay were sufficient.  Thompson, 2006 CCA LEXIS 479, at *14-*16.  In reaching this conclusion, the

12

Court found that much of the delay during the thirty-seven day period was a result of confusion as to whether civilian or military authorities would prosecute the off-post offenses. Id. at *14. The Court also noted other factors affecting the prosecution, including testimony about the simultaneous responsibilities of the trial counsel for other cases and the understaffing of the office. Id. at *16.

In Mizgala, we emphasized the need to look "at the proceeding as a whole." 61 M.J. at 129. In so doing, we treated the procedural framework as an integrated process, rather than as a set of discrete factors. We emphasized that "constant motion is not the standard so long as the processing reflects reasonable diligence under all the circumstances." Id. In taking that approach, we noted:

> The processing of this case is not stellar. We share the military judge's concern with several periods during which the Government seems to have been in a waiting posture . . . [including] waiting for a release of jurisdiction for an offense that occurred in the civilian community [and] . . . periods evidencing delay in seeking evidence of the off-post offense . . . .

Id.

In viewing the procedural framework as a whole, we observe that the present case, like Mizgala, reflects processing by the Government that was not stellar, particularly in terms of the delays in contacting and coordinating with civilian officials.

13

As a general matter, factors such as staffing issues, responsibilities for other cases, and coordination with civilian officials reflect the realities of military criminal practice that typically can be addressed by adequate attention and supervision, consistent with the Government's Article 10 responsibilities. As in Mizgala, however, we do not consider the thirty-seven day period in isolation, but also consider the "proceeding as a whole," including the general movement forward during the full range of the pretrial period in this case, as well as the fact that some Government activity took place during the thirty-seven day period. We also take into account the fact that Appellant did not make a speedy trial request during the entire pretrial day period addressed by the military judge. She delayed making a request until 141 days after she was placed in pretrial confinement. See United States v. Birge, 52 M.J. 209, 212 (C.A.A.F. 1999).

In considering the matter of prejudice, we note that Appellant has not alleged either impairment of her defense or particularized anxiety or concern caused by the delay. See Mizgala, 61 M.J. at 129. With respect to prejudice from the conditions of her incarceration, we note that although the record establishes negative aspects of her confinement conditions, a number of considerations weigh against concluding that the conditions were "oppressive" for purposes of prejudice

14

under Article 10.  See id.  First, Appellant did not raise any kind of formal or informal complaint about her confinement conditions or otherwise request a change in conditions during the period at issue, and she has not alleged that she was precluded from doing so.  Moreover, after the Army Court of Criminal Appeals reinstated the charges, Appellant entered into a pretrial agreement that expressly waived her ability to assert a claim for relief under Article 13 for illegal pretrial confinement conditions.  Although her waiver of any Article 13 claim did not waive her Article 10 claim for speedy trial relief, we may consider that circumstance as a relevant factor bearing upon the question of prejudice for oppressive confinement, particularly in a case where she raised no prior complaints as to her confinement conditions.

We balance the foregoing considerations concerning length of delay, reasons for delay, absence of a speedy trial request, and potential prejudice in the context of the proceedings as a whole.  We conclude that the Court of Criminal Appeals did not err, under the specific circumstances of this case, in rejecting Appellant's claim that the processing of this case violated Article 10 in view of the limited period of time at issue -- thirty-seven days; a record that does not establish Government indifference or substantial inactivity over the full course of the pretrial proceeding; and Appellant's failure to demonstrate

15

prejudice in terms of oppressive confinement, as reflected in the absence of pretrial complaints about confinement conditions and Appellant's subsequent entry into a pretrial agreement waiving any Article 13 claim for illegal pretrial confinement conditions.

## III.  DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed.

United States v. Thompson, No. 09-0145/AR

STUCKY, Judge (concurring in the result):

I concur in the result, but write separately to express my conclusion that, under these facts, the delay was not "presumptively prejudicial" and, therefore, did not trigger further inquiry under Barker v. Wingo, 407 U.S. 514, 530-31 (1972).

This Court has "consistently noted that Article 10 creates a more exacting speedy trial demand than does the Sixth Amendment," United States v. Mizgala, 61 M.J. 122, 124 (C.A.A.F. 2005), without ever explaining the basis for this conclusion. In our earliest decision on this issue, we stated that the congressional hearings on the Uniform Code of Military Justice (UCMJ) "clearly indicate that Congress did not intend the military practice [concerning speedy trial under Article 10, UCMJ, 10 U.S.C. § 810 (2000)] to be different from the regular Federal criminal court procedure." United States v. Hounshell, 7 C.M.A. 3, 7, 21 C.M.R. 129, 133 (1956) (applying Sixth Amendment jurisprudence). However, in United States v. Burton, we "assume[d] for present purposes that the requirements of Article 10 are more rigorous," 21 C.M.A. 112, 117, 44 C.M.R. 166, 171 (1971), and adopted a presumption that Article 10, UCMJ, was violated by any pretrial confinement that exceeded three months. Id. at 118, 44 C.M.R. at 172. Since then, this Court has continued to state that "Article 10 as construed by

this Court demands more expeditious military trials than does the Constitution." United States v. Marshall, 22 C.M.A. 431, 434, 47 C.M.R. 409, 412 (1973); accord Mizgala, 61 M.J. at 124.

At the time the UCMJ was enacted, it was unclear whether the Bill of Rights applied to courts-martial at all. See Reid v. Covert, 354 U.S. 1, 37 (1957) (dictum); compare Gordon D. Henderson, Courts-Martial and the Constitution:  The Original Understanding, Bicentennial Issue Mil. L. Rev. 141 (1975), with Frederick Bernays Wiener, Courts-Martial and the Bill of Rights: The Original Practice, Bicentennial Issue Mil. L. Rev. 171 (1975).  That may explain why the drafters explicitly provided similar, though often superior, rights in the UCMJ.  See Article 27, UCMJ, 10 U.S.C. § 827 (2000) (right to counsel); Article 31, UCMJ, 10 U.S.C. § 831 (2000) (right against self-incrimination); Article 44, UCMJ, 10 U.S.C. § 844 (2000) (double jeopardy); Article 55, UCMJ, 10 U.S.C. § 855 (2000) (cruel and unusual punishment).  Similarly, Article 10, UCMJ, provides an accused the right to a speedy trial guaranteed to civilians by the Sixth Amendment.  While I am not convinced that Article 10, UCMJ, does embody a stricter standard than the Sixth Amendment, that question need not be answered to decide this case.  Under either the Sixth Amendment standard or one imposing some sort of heightened scrutiny, the delay in this case was insufficient to trigger an inquiry under Barker.

2

The majority states that it analyzes Article 10, UCMJ, violations using the procedural framework established by the Supreme Court in Barker for reviewing Sixth Amendment speedy trial claims, but then asserts that "'Sixth Amendment speedy trial standards cannot dictate whether there has been an Article 10 violation.'" United States v. Thompson, __ M.J. __ (10) (quoting Mizgala, 61 M.J. at 124). By doing so, in the context of tacitly ignoring the fundamental initial steps of the Barker process, the majority fails to set out what, if anything, the elevated Article 10, UCMJ, standard amounts to.

To trigger a Barker inquiry, the delay must be "presumptively prejudicial." 407 U.S. at 530. Whether a delay is "presumptively prejudicial" "is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." Id. at 530-31. Instead of considering the seriousness and complexity of Appellant's case, and the substantial effect of heavy operational demands on personnel, the majority finds the 145-day pretrial confinement period sufficient to trigger a speedy trial inquiry by referencing another case in which the Court held that a 117-day period of pretrial confinement triggered the Article 10, UCMJ, inquiry. __ M.J. __ (11) (citing United States v. Cossio, 64 M.J. 254,

257 (C.A.A.F. 2007)).  In <u>Cossio</u>, without examining the seriousness or complexity of the charges, the Court concluded that a <u>Barker</u> inquiry was triggered by the 117-day delay where the accused had moved for a speedy trial.  <u>Cossio</u>, 64 M.J. at 257.

Of the 145 days Appellant spent in pretrial confinement, 39 days were as a result of defense-requested delays.  Considering the complexity and seriousness of the charges -- theft of a bank card and other items and misuse of the bank card in the civilian community that involved a joint investigation with civilian authorities -- and the fact that operational demands necessitated the appointment of four successive trial counsel, I conclude that the 106 days attributable to the Government that Appellant spent in pretrial confinement were not "presumptively prejudicial" and, therefore, did not trigger the need for a <u>Barker</u> inquiry.