# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————

**No. 201700136**

———————————

**UNITED STATES OF AMERICA**
Appellee

v.

**PATRICK E. MCKEE II**
Lance Corporal (E-3), U.S. Marine Corps
Appellant

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel Forrest W. Hoover, USMC.
Convening Authority: Commanding General, 2d Marine Division,
Camp Lejuene, NC.
Staff Judge Advocate's Recommendation: Lieutenant Colonel
Winston G. McMillan, USMC.
For Appellant: Commander Chris D. Tucker, JAGC, USN.
For Appellee: Lieutenant Commander Justin C. Henderson, JAGC,
USN; Lieutenant Megan P. Marinos, JAGC, USN.

———————————

Decided 12 October 2017

———————————

Before HUTCHISON, FULTON, and SAYEGH, *Appellate Military Judges*

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————

HUTCHISON, Senior Judge:

At an uncontested general court-martial, the appellant was convicted of one specification each of attempted sexual assault of a child and attempted sexual abuse of a child and five specifications of sexual assault of a child—violations of Articles 80 and 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880 and 920b (2012). The convening authority (CA) approved the

adjudged sentence of 15 years' confinement, reduction to pay grade E-1, total forfeiture of pay and allowances, and a dishonorable discharge. Pursuant to a pretrial agreement, the CA suspended all confinement in excess of eight years.

In four assignments of error, the appellant alleges that his rights to a speedy trial under RULE FOR COURTS-MARTIAL (R.C.M.) 707, MANUAL FOR COURTS-MARTIAL (2016 ed.), Article 10, UCMJ, and the Sixth Amendment have been violated, and that his Sixth Amendment right to counsel was violated because his trial defense counsel was ineffective for not raising the speedy trial concerns at trial. Having carefully considered the record of trial and the parties' submissions, we find no error materially prejudicial to the substantial rights of the appellant and affirm the findings and sentence. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

While deployed to Okinawa, Japan, the appellant engaged in sexually explicit conversations over social media with CG—an individual he believed was a 14-year-old girl. In fact, CG was an undercover agent working with the Naval Criminal Investigative Service (NCIS). On 19 May 2016, the appellant was apprehended at a bus stop onboard Camp Hansen after he traveled to meet CG in order to have sex. During a subsequent NCIS interrogation, the appellant admitted to having committed numerous sexual acts with two underage girls in North Carolina during his enlistment. Based on his admissions, the appellant was placed in pretrial confinement that same day.

On 9 June 2016, the trial counsel requested that the period of time from 19 May 2016 to 3 July 2016—a total of 45 days—be considered "excludable delay" pursuant to R.C.M. 707(c).[1]  In support of the request, the trial counsel noted that following the appellant's admissions, the appellant was transferred back to Camp Lejeune, North Carolina, that NCIS was scheduled to interview the two minor victims on 3 June 2016, and that NCIS estimated the investigation would be complete by the end of June 2016. The CA granted the request for excludable delay.

On 14 July 2016, the two specifications alleging attempted sexual abuse of a child and attempted sexual assault of a child were preferred. On 9 August 2016, five sexual assault specifications were preferred. On 16 August 2016, the Civilian Defense Counsel (CDC) requested to delay the preliminary hearing set for 19 August 2016 to 16 September 2015; acknowledging that this request would result in 29 days excludable delay pursuant to R.C.M. 707.

---

[1] Appellee's Motion to Attach Documents of 11 Jul 2017, Appendix 1, at 2.

On 14 September 2016, 27 days after the original preliminary hearing date, the appellant waived his Article 32, UCMJ, hearing. On 12 October 2016, the CA referred both the Charge and Additional Charge to general court-martial.

The appellant was arraigned on 24 October 2016 and the CDC agreed to a trial management order that docketed trial for 23-27 January 2017. On 27 January 2017, the appellant entered unconditional guilty pleas to all charges and specifications.

## II. DISCUSSION

For the first time on appeal, the appellant argues he was denied his regulatory, statutory, and constitutional rights to a speedy trial, and that he "did not provide a knowing and voluntary waiver" of these rights "prior to entering an unconditional guilty plea."[2] We evaluate each of the appellant's speedy trial claims in turn.

### A. R.C.M. 707

R.C.M. 707(a) provides that an "accused shall be brought to trial within 120 days after . . . [t]he imposition of restraint[.]" For purposes of the rule, an accused is "brought to trial" when he is arraigned on the charges. R.C.M. 707(b)(1). Failure to comply with the rule results in dismissal of the affected charges. R.C.M. 707(d). "Thus, the duty imposed on the Government by R.C.M. 707 is to arraign an accused within 120 days of . . . pretrial confinement, or face dismissal of the charges. The duty is no more and no less, and is satisfied once an accused is arraigned." *United States v. Cooper*, 58 M.J. 54, 59 (C.A.A.F. 2003) (footnote omitted). However, "a plea of guilty which results in a finding of guilty waives any speedy trial issue as to that offense." R.C.M. 707(e). Consequently, the appellant waived his claim when he entered unconditional guilty pleas at court-martial and was convicted.

Even absent waiver, the appellant's argument fails. The appellant's R.C.M. 707 claim rests entirely on the 158 days that passed between his entry into pretrial confinement on 19 May 2016 and his arraignment on 24 October 2016. However, the appellant fails to take into account the 72 days excluded by the CA pursuant to R.C.M. 707(c).[3] Factoring in the excludable delay, the appellant was arraigned on day 86 following his entry into pretrial confinement. Thus, even if the appellant had not waived his claim, we would find no violation of the appellant's right to speedy trial under R.C.M. 707.

---

[2] Appellant's Brief of 26 Jun 2017 at 5.

[3] This includes the 45 days excluded at the request of the government and the 27 days from the original Preliminary Hearing date to the date of the appellant's Article 32, UCMJ, waiver.

**B. Article 10, UCMJ**

The appellant alleges that the government's failure to exercise "due diligence" in "mov[ing] the case to trial" resulted in a violation of his Article 10, UCMJ, right to speedy trial.[4] We review Article 10, UCMJ, speedy trial claims *de novo*. *Cooper*, 58 M.J. at 58.

"[A] servicemember who enters an unconditional guilty plea may appeal a speedy trial claim under Article 10 only if the accused has invoked Article 10 at trial by filing and litigating an Article 10 motion at trial." *United States v. Tippit*, 65 M.J. 69, 75 (C.A.A.F. 2007); *see also United States v. Dubouchet*, 63 M.J. 586, 588 (N-M. Ct. Crim. App. 2006) (holding that "an unconditional guilty plea that ultimately results in a guilty finding waives an Article 10 speedy trial issue as to that offense when raised for the first time on appeal") (citations omitted)). Here, as in *Tippit*, the appellant did not make or litigate a motion under Article 10, UCMJ, at trial. Therefore, any speedy trial claim with respect to Article 10, UCMJ, was waived.

The appellant, however, has asserted he did not knowingly and voluntarily waive his speedy trial right under Article 10, UCMJ. Assuming *arguendo* that his Article 10, UCMJ, right was preserved, we examine his claim.

Article 10, UCMJ, commands that when a service member is placed in pretrial confinement, "immediate steps shall be taken . . . to try him or to dismiss the charges and release him." In reviewing Article 10 claims, courts do not require "constant motion, but reasonable diligence in bringing the charges to trial." *United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005) (citations and internal quotation marks omitted). This "duty imposed on the [g]overnment . . . does not terminate simply because the accused is arraigned." *Cooper*, 58 M.J. at 60. Rather, it extends to "at least the taking of evidence." *Id.* Finally, we look at four factors in examining the circumstances surrounding an alleged Article 10 violation: "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *Mizgala*, 61 M.J. at 129 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

Given this legal framework, we now analyze the *Barker* factors. In doing so, we recognize that none of the four factors has any "talismanic power"; rather, "we must . . . weigh all the factors collectively before deciding whether a defendant's right to a speedy trial has been violated." *United States v. Wilson*, 72 M.J. 347, 354-55 (C.A.A.F. 2013) (citations and internal quotation marks omitted).

---

[4] Appellant's Brief at 16.

*1. Length of the delay*

The length of delay constitutes a triggering mechanism under Article 10, UCMJ. *See United States v. Thompson*, 68 M.J. 308, 312 (C.A.A.F. 2010) (holding that the 145-day period the appellant spent in pretrial confinement was sufficient to trigger an Article 10 inquiry). The appellant's 253 days in pretrial confinement is sufficient to trigger analysis of the remaining *Barker* factors.

*2. Reasons for the delay*

The appellant argues that "[t]here is no facially valid reason that can be discerned from the record to explain why the [g]overnment did not move with reasonable diligence to bring [the appellant] to trial."[5] Without findings of fact developed during litigation of an Article 10, UCMJ, motion, there is little evidence in the record. But this lack of information is attributable to the failure of the appellant to raise this issue at trial. *See Barker*, 407 U.S. at 532 ("emphasiz[ing] that failure to assert the right [to a speedy trial] will make it difficult for a defendant to prove that he was denied a speedy trial.").

The government had no reason to provide a detailed accounting of its efforts to bring the case to trial in the absence of any motion by the appellant. While certainly the timeline in this case reveals delays between case milestones, nowhere in the timeline does the prosecution appear to languish. Rather, given the government's requirement to investigate additional, serious misconduct following the appellant's admissions, the appellant's request to continue the preliminary hearing, and the CDC's concurrence with a distant, future trial date,[6] the delay in this case does not seem unreasonable. Therefore, we conclude that the reasons for the delay weigh in the government's favor.

*3. Demand for speedy trial*

The appellant made no demand for speedy trial. In *Barker*, the Supreme Court noted that "[t]he more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id*. at 531-32.

---

[5] *Id*. at 18-19.

[6] *See United States v. King*, 30 M.J. 59, 66 (C.M.A. 1990) (holding that an accused "cannot be responsible for or agreeable to delay and then turn around and demand dismissal for that same delay"); *United States v. Wiley*, No. 201600120, 2017 CCA LEXIS 538, at *14-15, unpublished op. (N-M. Ct. Crim. App. 10 Aug 2017) (finding that the delay between arraignment and trial which was agreed upon by the trial defense counsel was presumptively reasonable).

We, too, have long held that "the right to a speedy trial is a shield, not a sword," and that "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *United States v. Miller*, 66 M.J. 571, 575 (N-M. Ct. Crim. App. 2008) (citations and internal quotation marks omitted). Therefore, the third factor also weighs in favor of the government.

### 4. Prejudice to the appellant

"Prejudice . . . should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Mizgala*, 61 M.J. at 129 (citation and internal quotation marks omitted). We therefore examine the question of prejudice in light of three important interests the Supreme Court identified in *Barker*: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern; and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *United States v. Johnson*, 17 M.J. 255, 259 (C.M.A. 1984).

The appellant contends that (1) his pretrial confinement was "unduly oppressive" because there was nothing in the record to indicate pretrial confinement was necessary in the first place; (2) his pretrial confinement "inherently involved anxiety" due to separation from his family and "living under a cloud of suspicion"; and (3) his pretrial confinement "hindered his ability to meet with witnesses or revisit his home to gather potentially relevant evidence[.]"[7]

However, the appellant has not filed an Article 13, UCMJ, motion concerning any oppressive treatment in pretrial confinement and does not contend that his placement in pretrial confinement was procedurally defective, but merely disagrees with the decision to place him into pretrial confinement.[8] Additionally, he has provided no evidence that his anxiety was any greater than that normally experienced by those individuals in pretrial confinement.[9] Finally, beyond his vague assertions that his ability to meet with witnesses or gather relevant evidence was hindered, the appellant has

---

[7] Appellant's Brief at 21-22.

[8] *See Thompson*, 68 M.J. at 313 (concluding that failure to raise an Article 13, UCMJ, motion, though not dispositive of an Article 10 claim, may be considered as a relevant factor bearing upon the question of prejudice for oppressive confinement).

[9] *See Wilson*, 72 M.J. at 354 (expressing the CAAF's concern "not with the normal anxiety and concern experienced by an individual in pretrial confinement, but rather with some degree of particularized anxiety and concern greater than the normal anxiety and concern associated with pretrial confinement") (citations omitted)).

not demonstrated how his defense was impaired. Consequently, the appellant's failure to demonstrate prejudice in terms of oppressive confinement, heightened anxiety, or his ability to prepare for trial and present evidence weighs in favor of the government.

In balancing the *Barker* factors, we conclude the appellant was not denied his right to a speedy trial under Article 10, UCMJ.

## C. Sixth Amendment

The Sixth Amendment to the Constitution provides, that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. amend. VI. "In the military, Sixth Amendment speedy trial protections are triggered upon preferral of charges or the imposition of pretrial restraint." *United States v. Danylo*, 73 M.J. 183, 186 (C.A.A.F. 2014) (citation omitted). However, an unconditional guilty plea which results in a finding of guilty "waives any speedy trial issue as to that offense under the Sixth Amendment." *Tippitt*, 65 M.J. at 75 (citing *Mizgala*, 61 M.J. at 125).

Here, the appellant's unconditional guilty plea and resulting guilty finding waived any claim of a speedy trial violation under the Sixth Amendment, and thus we find no violation. As before, the appellant asserts that he did not make an intelligent and voluntary waiver of his Sixth Amendment speedy trial rights. Even assuming *arguendo* that the appellant's Sixth Amendment claim was preserved, we find, based on our analysis of the *Barker* factors *supra,* that the appellant was not denied his constitutional right to a speedy trial.

## D. Ineffective assistance of counsel

Finally, the appellant contends that his CDC was ineffective because he failed to raise speedy trial violations at trial or to "consult with and advise [the appellant] regarding his right to a speedy trial[.]"[10] In reviewing claims of ineffective assistance of counsel, we "look at the questions of deficient performance and prejudice *de novo*." *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012). However, we "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Tippit*, 65 M.J. at 76 (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

Thus, an appellant challenging the effectiveness of his counsel must satisfy the two-part test in *Strickland*.

---

[10] Appellant's Brief at 28.

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.

Regarding *Strickland's* first prong, "[a] defense counsel is presumed to be competent" and our review of defense counsel performance following a claim of ineffectiveness "should not be colored by the distorting effects of hindsight." *United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000). Consequently, we "will not second-guess the strategic or tactical decisions made at trial by defense counsel." *United States v. Paxton*, 64 M.J. 484, 489 (C.A.A.F. 2007) (citation and internal quotation marks omitted). As the *Barker* court noted, "[d]elay is not an uncommon defense tactic." 407 U.S. at 521. Indeed, every day the appellant remained in pretrial confinement—receiving full pay and allowances—increased the credit he would receive against any eventual sentence to confinement. Recognizing that the evidence against the appellant—including the appellant's confession to sexually assaulting two minor females—was particularly strong and likely to result in significant confinement, we find nothing unreasonable about the CDC's tactical decision to permit confinement credit to accrue rather than demand speedy trial and argue a weak speedy trial motion. *See Dubouchet*, 63 M.J. at 589 (rejecting "the appellant's assertion that his counsel's performance was ineffective" after noting that the appellant failed to "address any of the tactical reasons why the defense counsel would not raise a speedy trial issue"); *United States v. Patterson*, No. 201600189, 2017 CCA LEXIS 437, at *17 (N-M. Ct. Crim. App. 30 Jun 2017) (noting the appellant "failed to demonstrate how prioritizing confinement credit over a weak speedy trial claim and allowing additional days of potential confinement credit to accrue constitutes deficient performance.") (citation omitted)).

In order to satisfy the second prong of *Strickland*, and demonstrate prejudice based on a failure to make a speedy trial motion, "the appellant must show that there is a reasonable probability that such a motion would have been meritorious." *Dubouchet*, 63 M.J. at 589 (citations and internal quotation marks omitted). For all the reasons set forth above, we conclude that there is no reasonable probability the appellant would have prevailed if

his CDC had made a demand for speedy trial and litigated a motion under R.C.M. 707, Article 10, UCMJ, or the Sixth Amendment.[11]

Finding neither deficient performance nor prejudice, we find the appellant's ineffective assistance of counsel claim unsupported by the record.

### III. CONCLUSION

The findings and sentence, as approved by the CA, are affirmed. The supplemental promulgating order will reflect the appellant is entitled to 253 days of confinement credit. *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998).

Judge FULTON and Judge SAYEGH concur.

For the Court



R.H. TROIDL
Clerk of Court

---

[11] Even if the appellant had demanded a speedy trial, the remaining *Barker* factors—the reasons for the delay and lack of any prejudice to the appellant—would still favor the government.