# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM S32732

————————————

### UNITED STATES
*Appellee*

v.

### David G. GONZALEZ HERNANDEZ
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 2 August 2023

————————————

*Military Judge*: Matthew P. Stoffel.

*Sentence*: Sentence adjudged 16 February 2022 by SpCM convened at Kadena Air Base, Japan. Sentence entered by military judge on 20 March 2022: Bad-conduct discharge, confinement for 4 months and 1 day, reduction to E-1, and a reprimand.

*For Appellant*: Major David L. Bosner, USAF.

*For Appellee*: Lieutenant Colonel Thomas J. Alford, USAF; Major Joshua M. Austin, USAF; Captain Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, GRUEN, and MENDELSON, *Appellate Military Judges*.

Judge MENDELSON delivered the opinion of the court, in which Chief Judge JOHNSON and Judge GRUEN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

MENDELSON, Judge:

In accordance with Appellant's pleas and pursuant to a plea agreement, a special court-martial comprised of a military judge sitting alone convicted Appellant of one specification of failure to obey a lawful order; two specifications of willfully damaging non-military property; and one specification of stalking, in violation of Articles 92, 109, and 130, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 909, 930.[1] The court-martial sentenced Appellant to a bad-conduct discharge, confinement for four months and one day, reduction to the grade of E-1, and a reprimand. The convening authority took no action on the findings or sentence.

Appellant personally raises a single issue on appeal, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982): whether the Government violated Appellant's right to speedy trial under Article 10, UCMJ, 10 U.S.C. § 810. We find the Government did not violate Appellant's speedy trial rights under Article 10, UCMJ. Additionally, after reviewing the entire record of this proceeding, we have determined the findings and sentence as entered are correct in law and fact, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant was stationed at Kadena Air Base, Japan, where he met AJ, another junior enlisted Airman, at the First Term Airman Course in May of 2021. During the summer of 2021, AJ contacted Appellant by text message, asking for information about the defense language proficiency test. Subsequently, the two spent time together eating meals, bowling, hiking with a group of friends, and playing video games. In mid-July 2021, Appellant told AJ he would like their friendship to become a relationship. AJ responded that she was not interested in a relationship. A few days later, Appellant slashed all four tires on AJ's car with a pair of scissors. A week later, after AJ had her tires repaired, Appellant again slashed all four tires and spray painted the word "whore" on three sides of AJ's car. Throughout the rest of the summer and into the fall, Appellant followed AJ around Kadena Air Base on multiple occasions, placing her in fear. On 20 October 2021, Appellant drove his vehicle within 100 yards of AJ's residence numerous times, violating a no-contact order issued by his commander. Two days later, on 22 October 2021, Appellant was placed in pretrial confinement.

---

[1] Unless otherwise specified, all references to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.). Pursuant to the plea agreement, one specification of wrongful possession of a destructive device and one specification of stalking were withdrawn and dismissed with prejudice.

Ultimately, charges were preferred and referred for Appellant's offenses, a plea agreement was negotiated, and Appellant was arraigned on 15 February 2022, having served 116 days in pretrial confinement as of that date.

## A. Appellant's Motion to Dismiss

Before trial, on 24 January 2022, Appellant moved to dismiss the charges and specifications on the grounds that the Government failed to take immediate steps or use reasonable diligence to bring the case to trial, in violation of Article 10, UCMJ. In denying Appellant's motion, the military judge made the following findings of fact that we find are supported by the record.

## B. Military Judge's Findings of Fact

On 24 July 2021, AJ made a sworn statement to law enforcement, alleging Appellant had been following her around base on several different days. AJ also reported that she believed Appellant defaced her personal vehicle and slashed all four of her tires.

On or about 5 August 2021, Security Forces Office of Investigations (SFOI) took possession of AJ's vandalized car, including the slashed tires. On 22 September 2021, SFOI seized four knives from Appellant's room with reason to believe the knives could have been used to slash AJ's tires.

Between on or about 22 September 2021 and 3 January 2022, SFOI sent the tires and knives to the United States Army Criminal Investigation Laboratory (USACIL) for scientific analysis. A forensic chemist completed a forensic examination and produced a trace evidence report on those items on 3 January 2022. Toolmark and tool evidence examinations were also conducted at USACIL, in an attempt to determine whether the knives seized from Appellant were used in damaging AJ's tires. An examiner submitted a report of this analysis on 4 February 2022.

On 19 August 2021, Appellant asserted his right to a speedy trial through his trial defense counsel. This demand occurred prior to both Appellant entering pretrial confinement and the preferral of charges, and was included in trial defense counsel's notice of representation.

Appellant was observed coming within 100 yards of AJ's residence on the evening of 20 October 2021, in violation of a no-contact order previously issued by his squadron commander.[2]

On 22 October 2021, Appellant was placed into pretrial confinement. Following Appellant's entry into pretrial confinement, a neutral and

---

[2] The record contains a copy of the no-contact order showing it was issued on 30 August 2021.

detached officer found probable cause for continued confinement. Appellant's commander submitted a timely review within 72 hours and ordered the confinement be continued.

Additionally, on 22 October 2021, investigators responded to a report of a possible improvised explosive device found in Appellant's personal vehicle. Investigators conducted a search of Appellant's vehicle and located a PVC pipe with balloons fastened, and a gas can containing an undetermined fluid. Those items were seized and the fluid was analyzed on 29 October 2021.

The pretrial confinement hearing was initially set for 27 October 2021, but the hearing was held on 29 October 2021 pursuant to Defense's request for delay.

On 5 November 2021, Appellant's commander preferred charges against him. The Government's ready date for the preliminary hearing was 15 November 2021. On 23 November 2021, the preliminary hearing was conducted.[3] On this same date, the Defense submitted a formal discovery request which also included Appellant's demand for a speedy trial.

On 2 December 2021, the preliminary hearing officer (PHO) completed his report and provided it to the office of the servicing staff judge advocate. When appointing the PHO, the special court-martial convening authority informed the PHO that the preliminary hearing was his primary duty until it was completed, and directed the PHO to submit the report and recommendations within eight calendar days of the conclusion of the hearing. The PHO did not submit the report within that time, instead submitting it on the ninth calendar day. During the nine-day period, the PHO did not work on his report for six of those days. Of those six days, four days were the result of the PHO enjoying the full Thanksgiving holiday weekend and two days were the result of a no-notice military duty.[4]

On 6 December 2021, the case paralegal provided the Defense a copy of the preliminary hearing report. In the report, the PHO advised against

---

[3] Although not included in the military judge's findings of fact, the record demonstrates that trial defense counsel was not available for the preliminary hearing until 23 November 2021. Specifically, the record includes email correspondence from trial defense counsel to the base legal office stating: "As for exclusion of time, that is correct: no issues with excluding the time between 15–22 November due to Defense unavailability for the [preliminary hearing]."

[4] The PHO's report explains the two-day delay was due to an emergency deployment response exercise.

preferral of Specification 2 of Charge I, which alleged wrongful possession of an explosive device.

On 28 December 2021, all preferred charges and specifications were referred against Appellant, including Specification 2 of Charge I. The referred charges included one charge and two specifications alleging violations of Article 92, UCMJ, with one specification alleging a failure to obey a lawful order for violating a no-contact order issued by Appellant's commander, and one specification alleging a violation of a lawful general regulation for possession of a destructive device; one charge and two specifications of damaging non-military property, in violation of Article 109, UCMJ; and one charge with two specifications alleging stalking, in violation of Article 130, UCMJ. The referred charge sheet was served on Appellant ten days after referral, on 7 January 2022.

After receipt of the preliminary hearing report, but prior to the referral of charges, the Defense submitted a by-name request for a forensic psychologist on 21 December 2021. The following day, on 22 December 2021, the Defense submitted a request for an expert in weapons and firearms. Additionally, after receipt of the referred charges, on 8 January 2022 the Defense submitted a request for expert assistance in forensic chemistry. All three requests were routed to the convening authority on 11 January 2022, and were denied by the convening authority on 26 January 2022.

On 11 January 2022, trial counsel formally responded to defense counsel's first discovery request that was originally sent on 23 November 2021. Through 8 February 2022, the Prosecution was still fulfilling its discovery obligations and providing matters requested by the Defense, to include statements made by Appellant.

On 8 February 2022, Appellant submitted an offer for plea agreement. The agreement was accepted by the convening authority on 10 February 2022. Appellant was arraigned on 15 February 2022, having served 116 days in pretrial confinement as of that date.[5]

---

[5] Although not included in the military judge's findings of fact, the record demonstrates there was a one-week delay due to the military judge's unavailability. Specifically, the record contains an email from trial defense counsel stating: "[T]he Defense is available for the [G]overnment's ready date of 7 February; however, as I have previously mentioned, the [chief circuit military judge] informed everyone that no military judges would be available the week of 7 February 2022 due to [military judge] training and asked that no one docket anything that week." The record also demonstrates that the trial was initially set for 14 February 2022, but was continued by one day due to Japanese travel restrictions and inclement weather. Appellant did not object to the one-day continuance.

While Appellant was in pretrial confinement, trial defense counsel was required to coordinate times in advance with the military confinement facility to speak to Appellant on the phone. Also, during pretrial confinement, Appellant's leadership assisted in coordinating with a local auto dealer to keep Appellant from going into arrears with an auto payment. As a result, Appellant received a four-month delay in making car payments, and was only responsible for a $25.00 late fee.

After making these extensive findings of fact and weighing the factors outlined in *Barker v. Wingo*, 407 U.S. 514 (1972), the military judge denied Appellant's motion, ruling "the [G]overnment, as a whole, moved with reasonable diligence in bringing the case to trial." Appellant ultimately pleaded guilty on 16 February 2022 in accordance with the plea agreement and was sentenced on the same date.

## II. DISCUSSION

### A. Law

Whether an appellant was denied his right to speedy trial under Article 10, UCMJ, is a question of law we review de novo. *United States v. Cooley*, 75 M.J. 247, 259 (C.A.A.F. 2016) (citing *United States v. Cossio*, 64 M.J. 254, 256 (C.A.A.F. 2007) (additional citations omitted). However, "a military judge's findings of fact [ ] will be reversed only if they are clearly erroneous." *United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005) (citations omitted). "[A] litigated speedy trial motion under Article 10[, UCMJ,] is not waived by a subsequent unconditional guilty plea." *Id.*

Article 10, UCMJ, provides in pertinent part: "When a person subject to this chapter is ordered into arrest or confinement before trial, immediate steps shall be taken . . . to try the person or to dismiss the charges and release the person." 10 U.S.C. §§ 810(b)(1), 810(b)(1)(B). The speedy trial requirement of Article 10, UCMJ, "does not demand constant motion but does impose on the Government the standard of 'reasonable diligence in bringing the charges to trial.'" *Cooley,* 75 M.J. at 259 (quoting *Mizgala,* 61 M.J. at 129). "Short periods of inactivity are not fatal to an otherwise active prosecution." *Mizgala*, 61 M.J. at 127 (citation omitted). Appellate courts should remain mindful of "the proceeding as a whole and not mere speed." *Id.* at 129 (citation omitted).

"[A]lthough Sixth Amendment[6] speedy trial standards cannot dictate whether there has been an Article 10 [,UCMJ,] violation, the factors from *Barker v. Wingo* are an apt structure for examining the facts and

---

[6] U.S. CONST. amend VI.

circumstances surrounding an alleged Article 10 [,UCMJ,] violation." *Id.* at 127 (citations omitted). Accordingly, "our framework to determine whether the Government proceeded with reasonable diligence includes balancing the following four factors: (1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *Id.* at 129 (citing *Barker,* 407 U.S. at 530) (additional citation omitted). However, these factors are not "talismanic" and "must be considered together with such other circumstances as may be relevant." *United States v. Wilson,* 72 M.J. 347, 351 (C.A.A.F. 2013) (quoting *Barker*, 407 U.S. at 533).

When assessing the reason for delay, this court considers the context, because a "delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531. Additionally, a delay intended to "hamper the defense" should be weighted more heavily than a "more neutral reason such as negligence." *Id.* Where the delay is based on the prosecution's trial strategy, a time-consuming approach is permissible if the strategy is "not unusual or inappropriate" under the circumstances. *United States v. Danylo*, 73 M.J. 183, 187 (C.A.A.F. 2014). "[O]rdinary judicial impediments, such as crowded dockets, unavailability of judges, and attorney caseloads, must be realistically balanced." *United States v. Kossman*, 38 M.J. 258, 261–62 (C.M.A. 1993).

The Supreme Court of the United States identified three interests, related to the speedy trial protection, to consider when assessing prejudice: (1) "to prevent oppressive pretrial incarceration;" (2) "to minimize anxiety and concern of the accused;" and, most importantly, (3) "to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532 (footnote omitted).

**B. Analysis**

On appeal, Appellant personally asserts a violation of his right to speedy trial under Article 10, UCMJ. Appellant notes he was in pretrial confinement for 116 days total, and specifically raises two time periods in which the Government failed to proceed with reasonable diligence: (1) the nine days the PHO took to complete the preliminary hearing report, and (2) the ten days the Government took to serve the referred charge sheet on Appellant. Appellant concedes the military judge's findings of fact were not clearly erroneous and urges this court to accept the findings of fact. However, Appellant maintains that the military judge erred as a matter of law in weighing the *Barker* factors and impermissibly placed the burden on Appellant to demonstrate prejudice.

We find sufficient evidence in the record to support the military judge's findings of fact. We review de novo whether those facts demonstrate a lack of reasonable diligence under Article 10, UCMJ, beginning with an analysis of the *Barker* factors.

**1. Length of the Delay**

The first factor under the *Barker* analysis serves as a "triggering mechanism," meaning that unless the period of delay is unreasonable on its face, "there is no necessity for inquiry into the other factors that go into the balance." *Cossio*, 64 M.J. at 257 (internal quotation marks and citation omitted). Although the *Barker* court found "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months," 407 U.S. at 523, the President has designated 120 days as a presumptively prejudicial length of delay in bringing a confined accused to trial by court-martial. Rule for Courts-Martial (R.C.M.) 707(a)(2). However, R.C.M. 707 is not a limitation on Article 10, UCMJ, the protections of which are "distinct and greater." *Mizgala*, 61 M.J. at 125 (citations omitted). Thus, it is possible to meet the minimum requirement for trial within 120 days under R.C.M. 707, but still violate Article 10, UCMJ, if prosecution was not reasonably diligent.

Our superior court held that a full *Barker* analysis was appropriate where the accused made a timely demand for speedy trial and had been held in continuous pretrial confinement for 117 days after he moved for relief. *Cossio*, 64 M.J. at 257. Likewise, in *Mizgala*, a 117-day period was sufficiently unreasonable to warrant further analysis. 61 M.J. at 128–29; *see also Kossman*, 38 M.J. at 261 ("We see nothing in Article 10[, UCMJ,] that suggests that speedy-trial motions could not succeed where a period under 90—or 120—days is involved."). Here, the military judge found "in light of the particular circumstances of this case, . . . the 116 days the accused has spent in pretrial confinement is facially unreasonable and thus triggers a full analysis in light of the *Barker* factors." We do not disturb this finding.

**2. Reasons for the Delay**

For this factor, "different weights should be assigned to different reasons." *Barker*, 407 U.S. at 531. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Id.* (footnote omitted). But "[m]ore neutral reason[s] such as negligence or overcrowded courts should be weighted less heavily." *Id.* "Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* On the other hand, "delay caused by the defense weighs against the defendant." *Cooley*, 75 M.J. at 260 (quotation omitted). In addition, "the Government has the right (if not the obligation) to thoroughly investigate a case before proceeding to trial." *Cossio*, 64 M.J. at 258.

Appellant directs our attention to two time periods in which he maintains the Government failed to proceed with reasonable diligence: (1) the nine days the PHO took to complete the preliminary hearing report, and (2) the ten days the Government took to serve the referred charge sheet on Appellant.

We note that in order to facilitate compliance with Article 10, UCMJ, "the President shall prescribe regulations setting forth procedures relating to referral for trial, including procedures for prompt forwarding of the charges and specifications and, if applicable, the preliminary hearing report . . . ." 10 U.S.C. § 810(b)(2). With respect to the preliminary hearing report, the President has prescribed that the PHO "shall make a timely written report of the preliminary hearing to the convening authority." R.C.M. 405(l)(1). In this case, the PHO was directed to submit the report within eight days, but was one day late in submitting the report on the ninth day. The PHO's timeline documented not working on the report for four days due to the Thanksgiving holiday weekend, and two days due to a no-notice military exercise. Under these circumstances we find the one-day delay in providing the preliminary hearing report was at most a result of negligence, which is "weighted less heavily but nevertheless should be considered." *Barker*, 407 U.S. at 531.

With respect to the ten days the Government took to serve the referred charge sheet on Appellant, we note the President has prescribed that "[t]rial counsel detailed to the court-martial to which charges have been referred for trial shall cause to be served upon each accused a copy of the charge sheet." R.C.M. 602(a). The non-binding discussion of the rule provides that "[t]rial counsel should comply with this rule immediately upon receipt of the charges." R.C.M. 602(a), Discussion.[7] Here, the charges were referred on 28 December 2021, and served on Appellant ten days later, on 7 January 2022. While we note this time period spanned the week between two federal holidays, as the military judge found in his ruling, the Government did not submit any testimony or other evidence into the record to explain the ten-day delay, as it was their burden to do. *See Cooley*, 75 M.J. at 260 ("[O]utside of an explicit delay caused by the defense, the Government bears the burden to demonstrate and explain reasonable diligence in moving its case forward in response to a motion to dismiss." (citation omitted)).[8] Without any evidence to explain the delay, this delay must be weighted against the Government.

---

[7] *See United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001) ("[T]he new format for the Manual [for Courts-Martial] was adopted in 1984 creating a distinction between the Rules for Courts-Martial set forth in the Executive Order and the non-binding Discussions of these rules . . . .").

[8] We note the Government made factual assertions to explain the delay in the response to the motion to dismiss. However, factual assertions in motions are not evidence. *See United States v. Lewis*, 42 M.J. 1, 4 (C.A.A.F. 1995) ("Generally speaking, factual assertions in motions are not evidence.")

Although not specifically raised by Appellant, we have reviewed the other periods of delay and find neutral or valid reasons for the delays. As the military judge found, the delay between receipt of the preliminary hearing report and referral of charges was reasonable in light of the PHO's recommendation to not refer a specification, the time needed for the convening authority and legal staff to review the report, and consideration of all these matters in making a decision on referral.

Moreover, while not a complex case, the forensic examination of the tires and knives may have provided critical evidence directly bearing on whether the Government could sustain its burden of proof, particularly where there was no eyewitness and otherwise only circumstantial evidence. *See Cossio*, 64 M.J. at 257 ("[I]t was not unreasonable for the Government to marshal and weigh all evidence, including forensic evidence, before proceeding to trial." (citation omitted)). Furthermore, several of the delays were attributable to the Defense, such as delays in conducting both the pretrial confinement hearing and the Article 32, UCMJ, preliminary hearing, and defense requests for expert assistance.

However, we note that the seven-day delay due to the unavailability of the military judge, while a legitimate and neutral reason, must be weighted in Appellant's favor because the Government bears ultimate responsibility for such circumstances. *See Barker*, 407 U.S. at 531 ("A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.").

We recognize that Article 10, UCMJ, does not demand constant motion, and there is no indication the delays were a deliberate attempt to hamper the Defense. Nonetheless, the one-day delay in providing the preliminary hearing report, the ten-day delay in serving the referred charges on Appellant, and the seven-day delay due to the military judge's unavailability must weigh in Appellant's favor, however slightly.

### 3. Demand for Speedy Trial

There is no dispute that Appellant made a demand for speedy trial. This factor weighs in Appellant's favor.

### 4. Prejudice

"Given that Article 10, UCMJ, is triggered only when an accused is *in* pretrial confinement, the prejudice prong of the balancing test triggered by pretrial confinement requires something more than pretrial confinement alone." *Cooley,* 75 M.J. at 262. The Supreme Court has identified three forms of cognizable prejudice under *Barker*, including oppressive pretrial

incarceration, anxiety and concern, and—most seriously—impairment of the accused's defense. *Mizgala,* 61 M.J. at 129 (citing *Barker,* 407 U.S. at 532).

On appeal, Appellant does not allege specific claims of prejudice, but instead argues that the Government has the burden of proving the absence of prejudice because the Government ultimately has the burden to show that the prosecution moved forward with reasonable diligence in response to a motion to dismiss. *See id*. at 125. Appellant maintains the Government could have put on evidence—in an attempt to prove the pretrial conditions were not oppressive, the lack of impairment to the Defense, and the compliance with trial defense counsel's request for access to Appellant—but failed to do so. However, Appellant's argument misconstrues the burden. While the Government does have the ultimate burden to demonstrate it acted with reasonable diligence in bringing Appellant to trial in accordance with Article 10, UCMJ, balancing of the *Barker* factors requires Appellant to demonstrate prejudice. *See United States v. Thompson*, 68 M.J. 308, 314 (C.A.A.F. 2010) (finding "[a]ppellant's failure to demonstrate prejudice" in applying the *Barker* factors).

In the motion to dismiss, trial defense counsel alleged, and submitted evidence in support of, two ways in which Appellant suffered prejudice: (1) trial defense counsel had to coordinate times in advance with the military confinement facility to speak with Appellant by telephone, and (2) Appellant had trouble paying his bills while in confinement resulting in a late fee on his car payment. However, while the record contains email correspondence dated 10 January 2022 in which trial defense counsel requested that the military confinement facility arrange for Appellant to call him at a designated time, there is no indication that the call did not happen as requested or that trial defense counsel was ever denied access to Appellant. Moreover, as the military judge found in his findings of fact and as supported by the record, Appellant's leadership assisted in coordinating with a local auto dealer to keep Appellant from going into arrears with an auto payment. As a result, Appellant received a four-month delay in making car payments, and was only responsible for a $25.00 late fee. While trial defense counsel argued to the military judge other ways in which Appellant was prejudiced—such as not having access to his personal cell phone or dorm room, which prevented him from gathering character letters and accolades for sentencing—the record contains no evidence to support these assertions.

We find Appellant has failed to demonstrate prejudice under any three of the forms of cognizable prejudice under *Barker*. There is no evidence that Appellant's pretrial confinement was overly harsh or oppressive. Further, Appellant has not identified "particularized anxiety and concern greater

than the normal anxiety and concern associated with pretrial confinement." *United States v. Wilson*, 72 M.J. 347, 354 (C.A.A.F. 2013) (citations omitted). Finally, and most importantly, the evidence in the record does not support a conclusion that Appellant's defense may have been impaired. Accordingly, this factor weighs in the Government's favor.

### 5. Balancing the *Barker* Factors

Considering the fundamental demand of Article 10, UCMJ, for reasonable diligence, and balancing the *Barker* factors, we conclude Appellant was not denied his right to a speedy trial under Article 10, UCMJ. While there may have been points in time when the Government might have been able to move the case more expeditiously, we find the balance of the relatively short delays, the neutral reasons for delay, the need for the Government to marshal and weigh forensic evidence before proceeding to trial, and the lack of prejudice demonstrates no relief is warranted. Our review of the record, including the findings of fact made by the military judge, firmly convinces us that the Government proceeded to trial with reasonable diligence under the circumstances of the case, and Appellant was not denied his Article 10, UCMJ, right to a speedy trial.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court