UNITED STATES of America

v.

Aubrey R. MILLER, Electrician's Mate Fireman (E–3), U.S. Navy.

NMCCA 200800014.

U.S. Navy–Marine Corps Court of Criminal Appeals.

15 April 2008.

For Appellant: LT Timothy Delgado, JAGC, USN.

For Appellee: Capt Sridhar Kaza, USMC.

Before O'TOOLE, Chief Judge, FELTHAM, Senior Judge, and MITCHELL, Appellate Military Judge.

## PUBLISHED OPINION OF THE COURT

O'TOOLE, Chief Judge:

This case is before us on a Government interlocutory appeal, pursuant to Article 62,

Uniform Code of Military Justice, 10 U.S.C. § 862, and RULE FOR COURTS-MARTIAL 908, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.). The Government contends that the military judge erred as a matter of law when she issued an order dismissing with prejudice the charges and specifications against the appellee on the grounds that the Government violated the appellee's right to a speedy trial under R.C.M. 707 and Article 10, UCMJ, 10 U.S.C. § 810. After carefully considering the record of the proceedings, the Government's brief on appeal, and the appellee's reply brief, we conclude the Government did not violate R.C.M. 707, but did violate Article 10, UCMJ. We affirm the dismissal of charges with prejudice.

### Standard of Review

In reviewing a Government interlocutory appeal, this court may act only on matters of law. Art. 62(b), UCMJ, 10 U.S.C. § 862; R.C.M. 908(c)(2); *see United States v. Cossio,* 64 M.J. 254, 256 (C.A.A.F.2007), *cert. denied,* —— U.S. ——, 127 S.Ct. 3029, 168 L.Ed.2d 730 (2007). We are bound by the military judge's findings of fact, unless they are unsupported by the evidence of record or are clearly erroneous. *United States v. Lincoln,* 40 M.J. 679, 683 (N.M.C.M.R.1994), *aff'd in part and set aside in part,* 42 M.J. 315, 321–22 (C.A.A.F.1995). However, we will review *de novo* the military judge's legal conclusion as to whether the appellee has received a speedy trial. *United States v. Mizgala,* 61 M.J. 122, 127 (C.A.A.F.2005); *United States v. Cooper,* 58 M.J. 54, 57–59 (C.A.A.F.2003).

### Background

The appellee was charged with violating Article 80, UCMJ, 10 U.S.C. § 880, by attempting to receive child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A),[1] and by using internet search terms to locate child pornography on the internet. He was also charged with violating Article 92, UCMJ, 10 U.S.C. § 892, violation of a lawful general order, by using his government computer to search for and view pornography.

We accept the following chronology and basic facts, as found by the military judge. The appellee was stationed onboard USS WASP (LHD 1) when a routine check of the ship's computer usage revealed that he was apparently attempting to access child pornography on his government computer. The appellee was placed in pretrial confinement on 25 July 2007. The charges were preferred on 14 August and the convening authority (CA), USS WASP, referred the charges to a special court-martial on 15 August 2007.

On 28 August 2007, the CA ordered a mental status examination of the appellee under R.C.M. 706. The CA appointed Commander (CDR) Edward Simmer, MC, USN, a forensic psychiatrist stationed at Portsmouth Naval Medical Center, to conduct the exam. The appointing letter addressed to CDR Simmer purported to exclude "the delay resulting from this examination ... until the date the report of the board's ultimate conclusions is received by trial counsel." Appellate Exhibit I. CDR Simmer interviewed the appellee on 12 September 2007, but did not complete his written evaluation until 10 November 2007. On 1 December 2007, the trial counsel received the written report of the R.C.M. 706 board report. On 5 December 2007, the defense agreed to a trial date of 12 December 2007. During arraignment on that date, the defense moved to dismiss the charges based on the lack of speedy trial in violation of R.C.M. 707 and Article 10, UCMJ.

### Analysis under R.C.M. 707

Since the appellee was placed in pretrial confinement on 25 July 2007, the Government had until 22 November 2007 to bring him to trial, absent excludable delay. R.C.M. 707(a)(2). The appellee was arraigned on 12 December, 140 days following his confinement, which was 20 days beyond the time permitted under this rule for the start of trial. In determining what time, if any, should be excluded from the speedy trial calculation, the military judge declined to

---

1. This "attempted attempt" is inartfully pled. Article 134, UCMJ, 10 U.S.C. § 934—*not* Article 80—is the appropriate mechanism for assimilating and charging a crime under a federal statute,

such as attempted possession of child pornography, 10 U.S.C. § 2252A(a)(2)(A). *Compare* MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.), Part IV, ¶¶ 4a(b) and 60c4(c).

enforce the open-ended exclusion of time for the R.C.M. 706 board process ordered by the CA.[2] Instead, she received evidence from CDR Simmer regarding the time required to complete mental status examinations.[3] CDR Simmer testified that ordinarily his goal for processing R.C.M. 706 boards was 30 days, but that he did not always achieve that goal. Record at 36. In response to the military judge's question, CDR Simmer also testified that the fastest board he ever conducted, among the hundreds he has done, was "quite an effort" to complete. On that occasion, he reported to the court orally within one week. The written report required an additional week to prepare. *Id.* at 40.

The military judge's finding that CDR Simmer "had completed such evaluations in two to three weeks time," AE XV at 3, does not reflect the import of his testimony. CDR Simmer said that it generally took at least 30 days to complete a board, and sometimes longer. He testified to only one instance, among the hundreds of other examinations he has conducted, in which he was able to complete an examination in two weeks time. Based on this record, we conclude that the military judge was arbitrary in seizing upon this single two-week period of extraordinary effort, and then applying such an abbreviated time period in this case. Had the Government proceeded with a court order, or employed the military chain of command, it is likely that the examination could have been completed much sooner than it was. However, there are insufficient facts in the record to support a finding that it could have been completed substantially faster than 30 days. As a result, the exclusion of only 15 days is arbitrary and clearly erroneous.

■ Finally, the military judge found that, on 5 December 2007, the defense and the Government agreed to a trial date of 12 December. However, she came to no conclusion with respect to the status of the seven days between December 5 and 12 in her speedy trial calculations. We accept the finding that this delay was agreed to by the defense and we conclude that the time should have been excluded. Excluding this period alone means that, if any time in excess of 13 days was also excluded to conduct the R.C.M. 706 examination, the trial date of 12 December was within 120 days of the appellee having been placed in pretrial confinement. Even applying, *arguendo,* the military judge's arbitrary determination that 15 days was reasonably required for the R.C.M. 706 board, the appellee was brought to trial on day 118.

Based on the foregoing, we conclude there was no R.C.M. 707 violation. But, this does not end our analysis. R.C.M. 707 is not a limitation on Article 10, UCMJ, the protections of which are distinct and greater. *United States v. Mizgala,* 61 M.J. 122, 125 (C.A.A.F.2005). Thus, it is possible to meet the minimum requirement for trial within 120 days under R.C.M. 707, but still violate Article 10, if prosecution was not reasonably diligent.

### Analysis under Article 10

■ The standard of diligence under which we review a claim of denial of speedy trial under Article 10, UCMJ, "is not constant motion, but reasonable diligence in bringing the charges to trial." *United States v. Tibbs,* 35 C.M.R. 322, 325, 1965 WL 4672 (C.M.A.1965); *see United States v. Kossman,* 38 M.J. 258, 262 (C.M.A.1993). An apt structure for examining the facts and circumstances surrounding an alleged Article 10, UCMJ, violation are the four factors used to determine whether a Sixth Amendment speedy trial violation has occurred. *United States v. Cooper,* 58 M.J. 54, 61 (C.A.A.F. 2003); *see United States v. Birge,* 52 M.J. 209, 212 (C.A.A.F.1999)(citing *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). Those four factors are: (1) length of the delay; (2) reasons for the delay; (3) assertion of the right to a speedy

---

2. In view of our disposition of this case, we need not address whether the CA had the post-referral authority to exclude an open-ended period of time from speedy trial determination in conjunction with his order to conduct an R.C.M. 706 board.

3. There is no evidence as to whether a military judge was available post-referral to order the mental status examination; regardless, the military judge did not find the mental status examination was unnecessary.

trial; and (4) prejudice. *Birge,* 52 M.J. at 212 (citing *Barker,* 407 U.S. at 530, 92 S.Ct. 2182).

## A. Length of delay

As already noted, a total of 140 days of pretrial confinement had elapsed prior to the appellee's arraignment at a special court-martial on charges of improper use of a government computer and attempted receipt and possession of child pornography. This period of pretrial confinement is a significant portion, approaching forty percent, of the one-year jurisdictional maximum of a special court-martial. We conclude the length of delay weighs significantly against the Government.

## B. Reason for the delay

The Government asserts that the principal reason for delay was the need to complete an R.C.M. 706 board before proceeding to trial.[4] In assessing the merit of the Government's position, we consider the fact that the Government presented no evidence to support the CA's invoking authority to order a mental status examination after referral, rather than requesting it from the military judge in the due course of litigation. R.C.M. 706(b)(2). Furthermore, there is no evidence in the record that the Government subsequently sought judicial concurrence or assistance with conducting the board, even when it apparently was not being completed in a timely manner. Additionally, the CA directly appointed a Navy commander to conduct the examination without utilizing military chains of command. Since his chain of command was unaware he had been detailed by the CA, CDR Simmer was unable to prioritize the work assigned by the hospital, complete the appellee's examination, and deliver the letter report in any less than 95 days.

Lastly, and perhaps most importantly, the Government presented no evidence as to what action was taken to expedite the examination, particularly when it began to lag. There is no evidence of why it took the CA 10 days to provide the appellee's service record book to CDR Simmer, nor does the evidence of record describe what occurred between 10 November 2007, the date CDR Simmer actually completed the report, and 1 December 2007, when it was delivered to the trial counsel. There is no evidence that anyone concerned was tracking the mental status examination process and following up, as would be implied by due diligence.

Based on the foregoing, we agree with the military judge that the record in this case does not reveal reasonable diligence in bringing the case to trial. Rather, it reveals the Government opted to act without judicial cognizance, control, or assistance. Furthermore, the Government operated outside of established military chains of command and, perhaps most importantly, did not monitor or seek to expedite the examination they said they needed, fully aware the appellee was in pretrial confinement. We do not see malice in these circumstances and the military judge found none. However, we certainly do not find reasonable diligence.

We conclude the reasons for the delay weigh heavily against the Government.

## C. Demand for Speedy Trial

Though confined, the appellee at no time made a demand for speedy trial. The military judge found that, at arraignment, the defense made an oral motion to dismiss, citing violations of speedy trial after all delay had occurred. Record at 15. This was after the appellee acquiesced in and participated in the R.C.M. 706 board, AE II, and then agreed to a seven-day delay to the 12 December 2007 trial date. Instead of demanding a speedy trial, it is apparent that the defense waited silently rather than seeking to have the Government, or the military judge, move the proceedings forward. That is a tactical decision that was the appellee's to make in consultation with his counsel. We do not accept as a correct statement of fact or law that it was "not realistic" to demand speedy trial pending a mental status examination

---

4. The Government also argued before the military judge that there was need to further investigate the appellee's possible interactions with minor girls. However, the Government on appeal concedes that this investigation had no bearing on the timeliness of prosecution of charges then pending before the court. Interlocutory Appeal by the United States dated 28 Jan 2008 at 22, 28.

and that this inures to the appellee's benefit. The appellee always had the ability to demand speedy trial, to move for an expedited examination, or to seek any other relief he believed to be in his best interest. He certainly had no obligation to do so, and may legitimately adopt a tactic of waiting to see if the Government's case would collapse under the weight of time or circumstances. Clearly, though, selection of tactical options necessarily involves balancing the risk of losing the benefit of a forgone option against the potential benefit of the option chosen. Having chosen to lie in wait, the appellee "cannot be responsible for or agreeable to delay and then turn around and demand dismissal for that same delay." *United States v. King*, 30 M.J. 59, 66 (C.M.A.1990). "[T]he right to speedy trial is a shield, not a sword." *Id.* Indeed, the Supreme Court has emphasized that "failure to assert the right [to a speedy trial] will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 532, 92 S.Ct. 2182. We conclude the lack of a demand for speedy trial weighs against the appellee.

## D. Prejudice

█ Prejudice should be assessed in the light of those interests of an appellee which the speedy trial right was designed to protect. The Supreme Court has identified three such interests: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the appellee; and (3) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of an appellee adequately to prepare his case skews the fairness of the entire system. *Barker*, 407 U.S. at 532, 92 S.Ct. 2182 (footnote omitted).

The military judge made several findings of fact regarding prejudice to the appellee, including that the appellee's command deployed while he was in pretrial confinement, that he had not received command visits, that the appellee appeared at trial in dungarees, was not able to train or work in his rate, and was not receiving medical treatment for a severe mental defect or disease. The military judge also noted that the defense was impaired in preparing for trial because the results of the R.C.M. 706 board were not known until several days before arraignment.

First, we must reject as clearly erroneous the military judge's conclusion that the defense suffered prejudice in preparing for trial. There is no evidence indicating that, during the delay in this case, any witness became unavailable for trial, any evidence was lost, or any defense strategy was compromised. It is true that the R.C.M. 706 board results were not provided to the defense prior to the first week of December, but there is no evidence that this prejudiced the appellee in his trial preparation. Those board results did not establish a *prima facie* defense of lack of mental responsibility and, regardless of the results, the defense made no motion for relief based on an inability to prepare for trial and articulated no specific prejudice to the appellee's trial preparation.

Secondly we must also reject the military judge's finding that the appellee suffered from a lack of medical care and her conclusion that this prejudiced him. The evidence of record does not support such a finding. The results of the R.C.M. 706 board indicated that the appellee suffered from a severe mental disease or defect at the time of the alleged offenses in July 2007, but that, at the time of the report in December, he was not suffering from a mental disease or defect that impaired his ability to understand the nature of proceedings or to cooperate intelligently in his defense. AE II at 2. Furthermore, there is no evidence of record regarding what standard of care applied to, or was efficacious in treating, a diagnosis such as was rendered in this case. Finally, there is no evidence that the appellee requested any mental health care or that, in the event he needed or requested such care, appropriate resources were not available to him. Indeed, to the contrary, the brig records the military judge ordered appended to the record appear to indicate the appellee received medical care while in the brig. AE XII at 2 ("Amoritz—Med appt late last night. Med appt 1320 PNH OB/GYN"). The conclusion that a lack of mental health care prejudiced the appellee is clearly erroneous.

Thirdly, the military judge found prejudice in the appellee appearing in court in his

dungarees, a working uniform. It has long been established that the appearance of a service member in the correct uniform is a right of the appellee and it can be "silent evidence" in the case. *See United States v. Whitehead*, 27 C.M.R. 875, 876, 1959 WL 3695 (N.B.R.1959); *United States v. Daggett*, 34 C.M.R. 706, 708, 1964 WL 5101 (N.B.R. 1964). However, the appellee affirmatively waived his right to appear in the proper uniform at his arraignment and the military judge accepted this waiver. Record at 6–8. Even had the appellee not waived his right, R.C.M. 804(d)(1) places the burden of appearing in the correct uniform on the appellee and his defense counsel, and only secondarily upon the commander of the appellee, if assistance is requested. There was no evidence presented that the appellee or his counsel requested assistance in acquiring uniform items. It might well have been that such a request was not made because, as the military judge found, the appellee's command was at sea; but, there is no evidence that this was the reason.[5] However, even assuming the absence of his command rendered it unable to assist, regulations governing operation of Navy brigs require that brig staff personnel purchase uniforms, and health and comfort items for a detainee and then debit that detainee's pay account. Secretary of the Navy Instruction (SECNAVINST) 1640.9C at ¶¶ 7206, 8206 and 8211 (3 Jan 2006). The record is silent as to whether the appellee requested this assistance. Thus, while the military judge's findings are factually correct, there is no connection between the appellee appearing in dungarees and the asserted Government delay in this case. Even if there was such a connection, the military judge accepted the appellee's waiver and allowed him to proceed with the arraignment in dungarees. In doing so, she affirmatively assured the appellee that his appearance was non-prejudicial. Contrary to this assurance, and despite the appellee's waiver,

the military judge subsequently found that there was prejudice. This is clearly erroneous.

■ Next, as previously noted, the military judge found that the appellee's command was at sea and that he did not receive any command visits. Command visits are mandated by SECNAVINST 1640.9C at ¶ 7208. That instruction directs commanding officers to conduct weekly visits by a command representative, E–6 or above. When the detainee's command is on extended deployment, the Immediate Superior in Command is to provide for the visits. The explicit purpose of this requirement is to retain the identity of the detainee with his parent command and to reinforce the primary chain of command. *Id.* at ¶ 7208.2. Thus, the instruction does not confer any individual right upon the detainee, instead focusing on reinforcing the authority of the chain of command and unit cohesion. We conclude, therefore, that a failure to conduct timely command visits is, alone, not evidence of prejudice to a detainee. Similarly, there is insufficient evidence in the cryptic brig log entries AE XII or elsewhere in the record, upon which to find that the appellee suffered undue anxiety or concern as a result of not receiving command visits, or due to any other circumstance attending his confinement.

■ The military judge also found that the appellee was prejudiced by not receiving training or ship board experience while he was confined. While we accept the finding that he did not receive this training or experience, there are no facts in the record that other detainees received such training, so that the appellee's confinement was rendered oppressive or even more onerous than it was to any other pretrial detainee. We concede that the appellee did not participate in life aboard ship, but that fact is an inherent characteristic of pretrial confinement. It is

---

**5.** Trial defense counsel asserted at arraignment that the appellee was confined during the summer with his summer uniforms and that, due to having no command visits, he did not have the chance to get his proper winter uniform "through no fault of his own." Record at 13. While we accept counsel's averment as being in good faith, it is not evidence and it misapprehends the responsibility of the accused and his counsel with respect to obtaining a proper uniform or requesting assistance from the appellee's parent command or the brig. Certainly at some point there might well be prejudice to the appellee in the event his requests go unheeded. But, on this record, that evidence is not apparent.

not independent evidence that his confinement was oppressive. *See Cossio,* 64 M.J. at 257–58 (facts showed no prejudice beyond that inherent in sitting in pretrial confinement). We, therefore, conclude that the appellee did not suffer any additional prejudice as a result of not receiving in-rate training and experience while confined.

To summarize, the appellee was in pretrial confinement for 140 days, which necessarily involved some anxiety and stress, but there is insufficient evidence in the record to support a finding that the conditions of confinement were harsh or oppressive. Likewise, there is no evidence that the appellee's preparation for trial, defense evidence, trial strategy, or ability to present witnesses, on the merits or at sentencing, were compromised by the processing time in this case. Balancing these factors, we conclude that prejudice, if any, was minimal.

### E. Balancing of Factors

The substantial length of delay pending a special court-martial and the reasons for that delay both weigh heavily against the Government. On the other hand, it would be unusual to find an Article 10, UCMJ, violation where an appellee had not demanded speedy trial and where there is minimal, if any, demonstrable prejudice. In this case, however, we view with particular concern the actions of the Government. First, the CA directed a post-referral R.C.M. 706 board without seeking the military judge's order or her later concurrence. The CA then circumvented routine military chains of command by directing a specific physician to conduct the mental status exam, leaving its timely disposition without judicial or military oversight. All the while, the Government knew the appellee was in pretrial confinement for a period that eventually approached forty percent of the maximum confinement time authorized for his offenses. Finally, and most importantly, the Government has not met its burden of demonstrating that it diligently sought to follow the proceedings of the mental status examination or to expedite it when it obviously lagged. Even in the absence of a demand for speedy trial or obvious prejudice, we find that these circumstances tilt the balance against the Government. As a result, we conclude there has been a violation of the appellee's right to a speedy trial under Article 10, UCMJ.

### Conclusion

The military judge's dismissal of all charges, with prejudice, is affirmed.

Senior Judge FELTHAM and Judge MITCHELL concur.