# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39396**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Corey J. LAUBACH**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 7 June 2019[1]

————————————

*Military Judge:* Mark W. Milam (first arraignment); Vance H. Spath (motions); Shelly W. Schools (motions and trial).

*Approved sentence:* Bad-conduct discharge, confinement for 2 years and 6 months, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 21 September 2017 by GCM convened at Whiteman Air Force Base, Missouri.

*For Appellant:* Major Dustin J. Weisman, USAF (argued).

*For Appellee:* Captain Peter F. Kellett, USAF (argued); Lieutenant Colonel Joseph J. Kubler, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, DENNIS, and LEWIS, *Appellate Military Judges*.

Senior Judge JOHNSON delivered the opinion of the court, in which Judge DENNIS and Judge LEWIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

---

[1] We heard oral argument in this case on 16 January 2019.

JOHNSON, Senior Judge:

A general court-martial composed of a military judge alone convicted Appellant, in accordance with his pleas, of assault with a dangerous weapon—specifically, a loaded firearm—likely to produce death or grievous bodily harm in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928. The military judge sentenced Appellant to a bad-conduct discharge, confinement for two years and six months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.[2]

Appellant raises two issues on appeal: (1) whether dismissal without prejudice was a sufficient remedy for the Government's misuse of Appellant's immunized statements in violation of *Kastigar v. United States*, 406 U.S. 441 (1972); and (2) whether the military judge abused her discretion by denying the Defense's motion to dismiss the Charge and its Specification with prejudice for a violation of Article 10, UCMJ, 10 U.S.C. § 810. We find no error that substantially prejudiced Appellant's material rights, and we affirm the findings and sentence.

## I. BACKGROUND

In the summer of 2016 Appellant was a security forces Airman stationed at Whiteman Air Force Base (AFB), Missouri. Appellant was one of several Airmen under investigation for suspected illegal use of controlled substances. The Whiteman AFB legal office obtained a grant of testimonial immunity for Appellant from the Eighth Air Force commander, the general court-martial convening authority. On 13 July 2016, Appellant acknowledged receipt of his immunity and was interviewed by agents of the Air Force Office of Special Investigations (AFOSI). In the course of that interview, Appellant admitted to certain drug use and provided evidence regarding drug use by two other Airmen. Because the legal office did not anticipate that Appellant would be prosecuted for a drug offense, knowledge of his immunized statements was not limited within the legal office.

On 3 September 2016, after consuming alcohol, Appellant was handling a loaded handgun at an off-base residence when he shot another Airman, Airman First Class (A1C) BL, in the abdomen at close range. Appellant immediately called 911 for assistance. In the course of that call Appellant stated that he had fired the shot. A1C BL suffered severe internal injuries and nearly died from his wound, which required extensive surgery. A1C BL was hospitalized

---

[2] Appellant received 210 days of confinement credit for illegal pretrial confinement.

until 30 September 2016; long-term consequences of the shooting included a large scar across his abdomen and reduced life expectancy.

Appellant was arrested by civilian police and placed in civilian confinement on 3 September 2016. On 4 September 2016, civilian police interviewed Appellant; an AFOSI agent observed the interview but did not participate. Appellant was cooperative, agreed to make a statement, and admitted he had unintentionally shot A1C BL. Appellant was released on bail from civilian confinement and placed in military pretrial confinement the same day, 4 September 2016.

On 9 September 2016, a hearing was held pursuant to Rule for Courts-Martial (R.C.M.) 305 to determine whether Appellant would continue to be held in pretrial confinement. The pretrial confinement review officer (PCRO), Lieutenant Colonel (Lt Col) LM, announced at the conclusion of the hearing that he found Appellant should remain in pretrial confinement. After the hearing, Captain JP, one of the government representatives at the hearing and a member of the Whiteman AFB legal office, drafted a report of the pretrial confinement hearing as an aid for Lt Col LM to put his findings and conclusions in writing. Although no incriminating information from Appellant's immunized July 2016 interview with AFOSI was presented at the hearing, such information *was* included in the draft report. Lt Col LM retained these references to immunized information in his signed, final version of the report. In accordance with Lt Col LM's findings, Appellant remained in pretrial confinement.

On 22 September 2016, civilian authorities granted the Air Force's request for jurisdiction over Appellant's assault against A1C BL. On 3 November 2016, Appellant's squadron commander preferred one charge and specification of assault with a dangerous weapon in violation of Article 128, UCMJ, and one charge and specification of reckless endangerment in violation of Article 134, UCMJ, 10 U.S.C. § 934, against Appellant. The documents attached to the commander's indorsement to the charge sheet included immunized information.

The AFOSI's investigation of Appellant lasted until 16 November 2016, in part because the AFOSI received information about other possible offenses. These other possible offenses were distinct from the suspected incidents of drug abuse that gave rise to the grant of immunity in the preceding summer. However, the lead AFOSI agent for these later potential offenses and the shooting incident had also conducted the immunized interview of Appellant in July 2016.

A preliminary hearing pursuant to Article 32, UCMJ, 10 U.S.C. § 832, was held on 29 November 2016. Appellant's immunized statements were not introduced at the Article 32 hearing. However, immunized information was included in an attachment to documents provided to the special court-martial

convening authority and the general court-martial convening authority before Appellant's case was referred for trial by general court-martial on 13 December 2016.

On 22 December 2016, Appellant was arraigned at the initial session of his court-martial. After Appellant deferred his selection of forum and entry of pleas, the presiding military judge (MJ1) heard a defense motion that Appellant be released from pretrial confinement. MJ1 issued a written ruling on the motion the following day. MJ1 found that Lt Col LM was not neutral and detached in performing his role as PCRO, and that Lt Col LM abused his discretion by considering evidence not presented at the hearing in performing his role as PCRO. Nevertheless, MJ1 determined Appellant's continued pretrial confinement was appropriate, and Appellant remained confined.

Appellant's trial resumed on 28 March 2017 before a different military judge (MJ2). Prior to Appellant's entry of pleas, MJ2 received evidence and argument from counsel on several defense motions. The Defense moved to dismiss both charges and specifications for violation of Appellant's right to speedy trial under Article 10, UCMJ, as well as R.C.M. 707. MJ2 denied the Defense's speedy trial motion.

The Defense also moved to dismiss with prejudice both charges and specifications due to the Government's alleged misuse of Appellant's immunized statements to the AFOSI in violation of *Kastigar*. On 29 March 2017, in an oral ruling MJ2 granted the *Kastigar* motion to dismiss, without prejudice. MJ2 concluded, *inter alia*:

> [T]he case is somewhat unique, in that the misconduct being prosecuted was unanticipated at the time of the grant of immunity. However, it's indisputable that no care was taken to cordon off the immunized testimony. Frankly, it's infected every stage of the proceeding and the members of two Legal Offices.
>
> *Kastigar* has made it clear, again and again, it guards against the dangers of the testimony being used, and puts a heavy burden on the government to demonstrate there is no danger of it causing any inequality at the trial. The key is ensuring both the accused and the federal government are at the same spot, as if we had not compelled the testimony from this accused.
>
> . . . The government failed to demonstrate by a preponderance of the evidence, that the decision to prosecute was untainted by immunized testimony.

In his ruling, MJ2 specified that Appellant's squadron commander, the Whiteman AFB legal office, and the Eighth Air Force legal office were disqual-

ified from further involvement in Appellant's case. However, he did not disqualify the special court-martial convening authority nor the general court-martial convening authority from further participation because he found they had not reviewed the immunized information when acting on Appellant's case.

Immediately thereafter, MJ2 adjourned the court. He did not rule on a defense motion for additional pretrial confinement credit for alleged violations of Article 13, UCMJ, 10 U.S.C. § 813, and R.C.M. 305.

On 26 April 2017, the commander of Air Force Global Strike Command administratively reassigned Appellant to a security forces squadron at Malmstrom AFB, Montana. On 12 May 2017, Appellant's new squadron commander preferred one charge and one specification each of assault with a dangerous weapon and reckless endangerment in violation of Articles 128 and 134, UCMJ, identical to the original charges. Another Article 32, UCMJ, hearing was held on 27 June 2017, and the preliminary hearing officer's report was completed on 29 June 2017. The reckless endangerment charge and specification were withdrawn on 10 July 2017, and on 18 July 2017, the remaining aggravated assault charge and specification were referred for trial by a general court-martial.

Appellant was arraigned on 2 August 2017 in a session presided over by a third military judge (MJ3). On 20 September 2017, Appellant's trial resumed before MJ3. Among other motions, the Defense again sought to dismiss the sole Charge and its Specification for violation of Appellant's right to speedy trial.[3] MJ3 found the Government used "reasonable diligence" in bringing the case to trial and so denied the Defense's speedy trial motion. In addition, MJ3 denied a defense motion for relief based on the conditions of Appellant's military pretrial confinement. However, she granted Appellant 210 days of confinement credit for the PCRO's violations of R.C.M. 305 in conducting Appellant's pretrial confinement hearing based on MJ1's earlier findings that the PCRO was not neutral and detached and that the PCRO abused his discretion by considering evidence not presented at the hearing.[4]

After these rulings, Appellant elected to be tried by the military judge alone and entered an unconditional guilty plea to the Charge and Specification.

---

[3] The Government used a separate team of prosecutors with knowledge of the immunized information exclusively to litigate the speedy trial motion without contaminating the primary trial counsel team.

[4] The 210 days of credit awarded represented two days of credit for each day Appellant spent in pretrial confinement from the pretrial confinement hearing on 9 September 2016 until MJ1's determination on 22 December 2016 that pretrial confinement should continue.

## II. DISCUSSION

### A. Remedy for the *Kastigar* Violation

#### 1. Law

We review a military judge's selection of a remedy for an abuse of discretion. *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)).

"Through a grant of immunity coextensive with the privilege against self-incrimination, the Government may require a person to make a statement that would otherwise be incriminating." *United States v. Allen*, 59 M.J. 478, 482 (C.A.A.F. 2004) (citing *Kastigar*, 406 U.S. at 441). "If a person provides information under a grant of immunity, the Government in a subsequent criminal prosecution must affirmatively demonstrate 'that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.'" *Id.* (quoting *Kastigar*, 406 U.S. at 460) (citing *United States v. Boyd*, 27 M.J. 82, 84 (C.M.A. 1988)). Furthermore, "[t]he Government may not rely upon or use immunized testimony in making the decision to prosecute. The burden is upon the Government in such a case to demonstrate 'by a preponderance of the evidence, that the prosecutorial decision was untainted by the immunized testimony.'" *Id.* (quoting *United States v. Olivero*, 39 M.J. 246, 249 (C.M.A. 1994)) (additional citations omitted).

#### 2. Analysis

Appellant contends MJ2 abused his discretion by dismissing the charges and specifications without prejudice, which was an inadequate remedy in this case. He argues that dismissal without prejudice enabled the Government to reinitiate the prosecution, and therefore the Government "suffered no consequence." In contrast, Appellant avers he suffered "profound negative effects," specifically an extensive additional pretrial delay while he waited in confinement and while memories faded and evidence became stale. Appellant finds the result "absurd," "unjust," and effectively a "validation" of the Government's actions, and contends dismissal with prejudice was the only route to meaningful relief.

As an initial matter, the Government contends Appellant waived appellate review of this issue by his unconditional guilty plea, citing *United States v. Bradley*, 68 M.J. 279 (C.A.A.F. 2010). Appellant disagrees, distinguishing the circumstances in *Bradley* and noting that his appeal of the *Kastigar* remedy does not relate to the factual issue of guilt. *See* R.C.M. 910(j). We need not resolve this question because, assuming *arguendo* Appellant preserved the issue at trial, we find MJ2 did not abuse his discretion.

The test for whether the military judge has adequately remedied the Government's misuse of immunized information is not the extent to which the Prosecution has been made to suffer, but whether Appellant has been restored to "substantially the same position as if [he] had claimed [the] privilege [against self-incrimination]." *Allen*, 59 M.J. at 482 (second and third alterations in original) (quoting *Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52, 79 (1964)) (additional citation omitted). By dismissing the charges without prejudice and directing that the compromised squadron commander and legal offices have no role in further proceedings in Appellant's case, MJ2 substantially erased the taint created by the introduction of immunized information in the pretrial confinement, preferral, and referral processes. There is no indication in the record, and Appellant does not now contend, that his immunized statements had any substantive improper influence on the court-martial proceedings following the second preferral and referral.

Moreover, in contrast to Appellant's position on appeal, at trial the Defense effectively conceded that dismissal without prejudice would be a sufficient remedy. In arguing the *Kastigar* motion, Appellant's senior defense counsel told MJ2, *inter alia*:

> We are not here to dispute whether or not this case should or should not go forward to trial. I think, it's clear based on the facts -- I can't stand up here and argue with a straight face it shouldn't go to court. But, that process to get to court needs to be free of that taint. . . .

> And right now the only good remedy available is a dismissal of the charges. And an order from this Court directing a new legal office, a new convening authority to handle this case. . . .

> Start this case from scratch, dismiss the charges, and let a new team take over. Start this over with a fresh look at the evidence, let them come to the same or -- what would likely be the same conclusion, I submit to the Court, but then I can assure my client that the process is free from taint. If I have another team looking at it, in a clean case, a clean break, start again, is the best way to do it.

It is true that Appellant remained in confinement between MJ2's dismissal of the charges on 29 March 2017 and Appellant's eventual sentencing by MJ3 on 21 September 2017. However, whether Appellant was subjected to unlawful pretrial delay is a distinct issue for which Appellant was free to, and has, sought relief both at trial and before this court; we address that claim below. Similarly, whether Appellant was subjected to unlawful pretrial confinement was also a distinct issue for which Appellant was free to, and did, seek relief from MJ3. These issues stand on their own, and we decline Appellant's invitation to presume he was "profoundly" unfairly prejudiced by MJ2's decision to dismiss the charges without prejudice from the mere facts that his trial was further delayed and he remained in confinement pending trial.

Appellant compares his situation to the one the United States Court of Appeals for the Armed Forces (CAAF) addressed in *United States v. Salyer*, 72 M.J. 415 (C.A.A.F. 2013). However, *Salyer* is instructive with respect to Appellant's case not for its similarities, but for its differences. In *Salyer*, the CAAF found an appearance of unlawful command influence by the Prosecution because "the Government sought, through inappropriate means, disqualification of the military judge because it did not agree with the military judge's ruling." *Id.* at 427. Under the circumstances of the case, the CAAF found the only adequate remedy would be dismissal with prejudice because if it authorized a rehearing "the Government would obtain the result it sought to obtain through inappropriate means—a trial with a different military judge." *Id.* at 428. By contrast, in Appellant's case an effective alternative remedy was available. Whereas there was no way to undo the Prosecution's inappropriate effort to disqualify a particular military judge in *Salyer*, in Appellant's case it was possible to reinitiate an uncontaminated pretrial process.

The CAAF has recognized that dismissal, even without prejudice, is a "drastic remedy" to be used as a "last resort." *United States v. Douglas*, 68 M.J. 349, 354–55 (C.A.A.F. 2010) (citations omitted). Dismissal with prejudice is obviously even more drastic. Under the circumstances of this case, where the effect of the contamination could be substantially removed by reinitiating the process with a new, untainted squadron commander and legal offices, and where the Defense essentially conceded that dismissal without prejudice was an appropriate and adequate remedy, we do not find MJ2's decision to employ that remedy to be "'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *See McElhaney*, 54 M.J. at 130 (citations omitted).

## B. Speedy Trial

### 1. Law

Whether an appellant was denied his right to speedy trial under Article 10, UCMJ, is a question of law we review de novo. *United States v. Cooley*, 75 M.J.

247, 259 (C.A.A.F. 2016) (quoting *United States v. Cossio*, 64 M.J. 254, 256 (C.A.A.F. 2007)) (additional citation omitted). However, "a military judge's findings of fact . . . will be reversed only if they are clearly erroneous." *United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005) (citations omitted).

Article 10, UCMJ, provides in pertinent part: "When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him." 10 U.S.C. § 810. "[A]lthough Sixth Amendment speedy trial standards cannot dictate whether there has been an Article 10 violation, the factors from *Barker v. Wingo*[, 407 U.S. 514 (1972),] are an apt structure for examining the facts and circumstances surrounding an alleged Article 10 violation." *Mizgala*, 61 M.J. at 127 (citations omitted). Accordingly, "our framework to determine whether the Government proceeded with reasonable diligence includes balancing the following four factors: (1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *Id.* at 129 (citing *Barker*, 407 U.S. at 530) (additional citation omitted). However, these factors are not "talismanic" and "must be considered together with such other circumstances as may be relevant." *United States v. Wilson*, 72 M.J. 347, 351 (C.A.A.F. 2013) (quoting *Barker*, 407 U.S. at 533).

"The standard of diligence under which we review claims of a denial of speedy trial under Article 10 'is not constant motion, but reasonable diligence in bringing the charges to trial.'" *Mizgala*, 61 M.J. at 127 (quoting *United States v. Tibbs*, 35 C.M.R. 322, 325 (C.M.A. 1965)) (additional citations omitted). "Short periods of inactivity are not fatal to an otherwise active prosecution." *Id.* (quoting *Tibbs*, 35 C.M.R. at 325). We evaluate "the proceeding as a whole and not mere speed." *Id.* at 129 (quoting *United States v. Mason*, 45 C.M.R. 163, 167 (C.M.A. 1972)).

**2. Analysis**

MJ3 issued a written ruling on the Defense's motion to dismiss for violation of Appellant's right to speedy trial, wherein she made findings of fact and analyzed the pretrial delay in light of the four *Barker* factors. She concluded that although the Government made "missteps along the way resulting in the case being dismissed without prejudice, . . . viewing this case as a whole, these missteps were not so egregious or prevalent to result in a violation of Article 10," and the Government exercised "reasonable diligence" in bringing the case to trial. We accept MJ3's findings of fact where they are not clearly erroneous, but we review conclusions of law de novo. *Mizgala*, 61 M.J. at 127. Although we disagree with much of MJ3's analysis of the *Barker* factors, we also conclude the Government did not violate Article 10, UCMJ.

### *a. Length of Delay*

The first factor in the *Barker* analysis is the "length of the delay" which "is to some extent a triggering mechanism, and unless there is a period of delay that appears, on its face, to be unreasonable under the circumstances, there is no necessity for inquiry into the other factors that go into the balance." *Cossio*, 64 M.J. at 257 (internal quotation marks omitted) (quoting *United States v. Smith*, 94 F.3d 204, 208–09 (6th Cir. 1996)). In this case the length of the pretrial delay was substantial. A total of 382 days elapsed between Appellant's entry into pretrial confinement on 3 September 2016 and his conviction and sentencing on 20–21 September 2017. As Appellant notes, our superior court has found a shorter delay to constitute an Article 10, UCMJ, violation. *See Cooley*, 75 M.J. at 260, 263 (finding 289-day pretrial delay violated Article 10).

Surprisingly, MJ3 found the length of the delay "heavily" favored the Government and, in fact, was not facially unreasonable, such that "[n]o further analysis [wa]s required." MJ3 reached this conclusion by analyzing each "significant" time gap in the processing of the case, assessing whether each was facially unreasonable, and concluding that none was. MJ3 particularly noted the time the AFOSI took to conduct its investigation between the 3 September 2016 offense date and preferral of charges on 3 November 2016; a period of Defense-requested delay between the Government's initial case-ready date of 17 January 2017 and the initial trial date before MJ2 on 27 March 2017; another period of Defense-requested delay between 16 June 2017 and the second Article 32 hearing on 27 June 2017; and a third period of Defense-requested delay between the Government's case-ready date of 28 August 2017 and the final trial date of 20 September 2017. For purposes of this factor, MJ3 essentially treated MJ2's dismissal of the charges without prejudice on 29 March 2017 as a neutral consideration and independently assessed the Government's diligence with respect to the first and second pretrial processes.

On appeal, the Government declines to indorse MJ3's conclusion that there was no facially unreasonable delay. The Government contends it is not responsible for 107 days of the 382-day delay, mostly due to Defense-requested delays in the proceedings. However, it acknowledges 275 days of delay are attributable to the Government, which "may be enough to trigger a *Barker* analysis."

We find MJ3's analysis of the first factor to be flawed, and we conclude the length of the delay favors Appellant. The CAAF has explained, "an analysis of the first factor is not meant to be a *Barker* analysis within a *Barker* analysis." *United States v. Schuber*, 70 M.J. 181, 188 (C.A.A.F. 2011). Whereas reasons for the length of the delay are analyzed under the second factor, reasons for the delay, "circumstances that are appropriate to consider under the first factor include the seriousness of the offense, the complexity of the case, and the availability of proof," among others. *Id.* (citing *Barker*, 407 U.S. at 530–31, 531

n.31). In this case, although the offense for which Appellant was ultimately prosecuted was serious, it was not complex, and the proof was readily available to investigators. We find a delay of 382 days to try Appellant for a crime to which he immediately confessed, under the circumstances, was plainly *facially* unreasonable. Even if we were to accept on its face the Government's suggestion to exclude periods of delay attributable to defense requests, we would still find the 275 days of delay attributable to the Government to be facially unreasonable and to weigh in Appellant's favor. *See*, *e.g.*, *Cooley*, 75 M.J. at 260, 263 (finding 289-day delay facially unreasonable and a violation of Article 10); *Wilson*, 72 M.J. at 352 (finding 174-day delay facially unreasonable); *United States v. Thompson*, 68 M.J. 308, 312 (C.A.A.F. 2010) (finding 145-day delay facially unreasonable); *Cossio*, 64 M.J. at 257 (finding 117-day delay facially unreasonable).

### b. Reasons for Delay

Under the second *Barker* factor, "different weights should be assigned to different reasons" for delay. *Cooley*, 75 M.J. at 260 (quoting *Barker*, 407 U.S. at 531). In *Barker*, the Supreme Court explained:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

407 U.S. at 531 (footnote omitted). "In contrast, 'delay caused by the defense weighs against the defendant.'" *Cooley*, 75 M.J. at 260 (quoting *Vermont v. Brillon*, 556 U.S. 81, 90 (2009)).

Although, as described above, MJ3 found no facially unreasonable delay in her analysis of the first factor, "in anticipation of future appellate review" she nevertheless analyzed the remaining *Barker* factors. With respect to the reasons for delay, she found Appellant's case proceeded with reasonable diligence "as any general court-martial normally would." She acknowledged the unique aspect of the case was the Government's misuse of immunized information, which she found to be negligent "at most" and did not weigh heavily against the Government.

In contrast, Appellant contends the Government made a "purposeful" decision to misuse the immunized statements, and therefore the reasons for delay weigh heavily in his favor. In its analysis, the Government breaks the delay into five distinct periods, and asserts in each period either the Government

acted with reasonable diligence or the delay was attributable to the Defense, and therefore weighs against Appellant. The Government then separately assesses the impact of the *Kastigar* violation, concluding the error was not "flagrant" and, under the unusual circumstances of this case, was "not committed in such a manner to warrant a finding that the second *Barker* factor weighs in favor of Appellant."

We find the second factor weighs in favor of Appellant, although not heavily. Apart from the *Kastigar* error, we find the Government proceeded with reasonable, albeit non-exemplary, diligence to move Appellant's case to trial. For example, Appellant's assault against A1C BL was not difficult to investigate, and the charge for which Appellant was tried likely could have been preferred sooner than 3 November 2016. However, it was not unreasonable for the AFOSI to investigate information that Appellant may have committed other crimes that should be tried together. *See Cossio*, 64 M.J. at 258 ("[T]he Government has the right (if not the obligation) to thoroughly investigate a case before proceeding to trial."). Similarly, the four weeks that elapsed following MJ2's dismissal of the charges and Appellant's administrative reassignment to a squadron at another base by Air Force Global Strike Command could perhaps have been accomplished more quickly, but was not an unreasonable delay given the commander's periods of unavailability and the coordination required in this relatively unusual situation. Furthermore, although Appellant insists the Government is ultimately responsible for Defense-requested delays due to military trial defense counsel's scheduling conflicts, we find little support for this proposition in the CAAF's Article 10, UCMJ, jurisprudence. *See*, *e.g.*, *Wilson*, 72 M.J. at 349–52 (accepting trial judge's finding that the defense was responsible for 43 days of pretrial delay); *Thompson*, 68 M.J. at 312–14 (accepting trial judge's exclusion of 39 days of defense-requested delay); *but cf. United States v. Moreno*, 63 M.J. 129, 137 (C.A.A.F. 2006) ("While appellate defense counsel's caseload is the underlying cause of much of this period of delay, responsibility for this portion of the delay and the burden placed upon appellate defense counsel initially rests with the Government.")

Yet the two pretrial processes cannot be analyzed in isolation from each other. The second process would have been unnecessary had the Government not misused Appellant's immunized statements. In that sense, all the delay after 29 March 2017 not attributable to Defense-requested delays was unnecessary delay caused by the Government.

However, we find this error and the resulting delay, although confoundingly obtuse, were not purposeful, and therefore weigh "less heavily" against the Government. *See Barker*, 407 U.S. at 531. Several factors lead us to this conclusion. First, the Whiteman AFB legal office did not initially erect a "*Kastigar* wall" around the immunized information because the Government had

no intention of prosecuting Appellant for suspected drug offenses as of July 2016, and of course no one anticipated the shooting incident of 3 September 2016. Moreover, after Appellant's assault on A1C BL, the Government also never attempted to prosecute Appellant for any drug offense from July 2016 or earlier, or to introduce such evidence in a court-martial proceeding.

Second, the evidence indicates the Government had not introduced Appellant's immunized information at the 9 September 2016 pretrial confinement hearing when, at the conclusion of that hearing, Lt Col LM announced his finding that pretrial confinement should continue. The immunized information was introduced into the PCRO's memo composed after that point. Therefore, the immunized information was not material to the Government's effort to secure Appellant's pretrial confinement. MJ1's subsequent ruling on 22 December 2016 that Appellant's pretrial confinement should continue, made with full awareness of Lt Col LM's earlier errors as the PCRO, reinforces the point.

Third, the evidence in the record does not indicate the Whiteman AFB and Eighth Air Force legal offices intentionally violated *Kastigar*; rather, the evidence indicates they were unaware they had erred. MJ2 received testimony during the March 2017 hearing on the Defense's motion to dismiss that the Whiteman AFB staff judge advocate, Lt Col MM, believed that, although immunized information would be inadmissible at trial, its use in a pretrial confinement hearing would be permissible because such proceedings were "non-adversarial." He testified that he arrived at this conclusion after consulting with the Eighth Air Force staff judge advocate. Appellant emphasizes MJ2's comment that he had "never seen a case where immunized testimony was served on the accused as part of his preferral package. . . . [W]here [the Government] actually ha[d] the audacity to serve the immunized testimony on the accused . . . ." However, consistent with Lt Col MM's testimony, this comment underscores how oblivious the Government was to the error it was committing. Although we do not applaud the error, which necessitated MJ2's dramatic remedy of dismissal of the charges and disqualification of both legal offices and Appellant's squadron commander, it was apparently the result of good faith—albeit jarringly incorrect—legal analysis.

Fourth, MJ2 made findings—which we find not to be clearly erroneous—that the Whiteman AFB staff judge advocate and the Eighth Air Force staff judge advocate made recommendations to their respective convening authorities based only on the firearm charges, without referring to any immunized information. This finding further indicates the Government did not improperly benefit from its failure to contain the immunized information as it brought Appellant to trial for the assault on A1C BL.

Accordingly, we find the second factor weighs in favor of Appellant, although not heavily.

### c. Demand for Speedy Trial

Appellant made three separate demands for speedy trial during his pretrial confinement on 28 October 2016, 13 December 2016, and 29 June 2017. The Government concedes this factor favors Appellant. We agree.

### d. Prejudice

"Given that Article 10, UCMJ, is triggered only when an accused is *in* pretrial confinement, the prejudice prong of the balancing test triggered by pretrial confinement requires something more than pretrial confinement alone." *Cooley*, 75 M.J. at 262. The Supreme Court has identified three forms of cognizable prejudice under *Barker*, including oppressive pretrial incarceration, anxiety and concern, and—most seriously—impairment of the accused's defense. *Mizgala*, 61 M.J. at 129 (quoting *Barker*, 407 U.S. at 532).

Despite the duration of Appellant's pretrial confinement, we do not find oppressive incarceration. Appellant was ultimately sentenced to confinement for two years and six months, a period which exceeds the 593 days of total pretrial confinement credit to which Appellant was entitled.[5] Moreover, MJ3 denied Appellant's motion for relief for illegal pretrial confinement conditions, and Appellant has not renewed that claim on appeal. We do not have evidence Appellant was mistreated or suffered from unduly harsh conditions during his pretrial confinement.

With respect to anxiety and concern, "we are concerned not with the normal anxiety and concern experienced by an individual in pretrial confinement, but rather with some degree of particularized anxiety and concern greater than the normal anxiety and concern associated with pretrial confinement." *Wilson*, 72 M.J. at 354 (citations omitted). We do not find such particularized anxiety and concern in Appellant's case. Appellant contends he was held in pretrial confinement for an extended period before he was charged, which "would undoubtedly cause a great deal of anxiety and concern for any accused." However, although charges were not preferred against Appellant until two months after he entered pretrial confinement, the circumstances of his initial arrest and confinement by civilian authorities coupled with his pretrial confinement hearing would have left him in little doubt as to the nature of the offense for which he was held, and eventually convicted. We do not doubt Appellant experienced

---

[5] We do not mean to imply we would find prejudice had Appellant's pretrial confinement credit exceeded his sentence. *Cf. United States v. Danylo*, 73 M.J. 183, 188 (C.A.A.F. 2014) (noting, in the context of an alleged Sixth Amendment speedy trial violation, that the CAAF has "never held that pretrial confinement which exceeds an adjudged sentence is per se prejudicial" (citing *Bell v. Wolfish*, 441 U.S. 520, 539 (1979))).

some anxiety, but we have no basis to conclude it was greater than that ordinarily associated with pretrial confinement.

Additionally, we find no substantial impairment of Appellant's defense at trial resulting from his pretrial confinement. Evidence of Appellant's assault with a dangerous weapon against A1C BL was overwhelming nearly from the outset of the case. Appellant suggests he may have been prejudiced in that there is some indication in the record that A1C BL's attitude toward the prosecution shifted over time. In particular, the report of the first Article 32 hearing in November 2016 indicated at that point A1C BL did not want to participate in the prosecution. However, even if true, we find the significance of A1C BL's reluctance to participate at that point in time to be speculative at best. First, there is no indication A1C BL still felt that way as of the March 2017 trial date. Second, even if A1C BL was reluctant to testify, as a military witness the Government could have compelled his attendance at the trial. Third, even if A1C BL had not testified or participated, as described above evidence of Appellant's guilt was overwhelming and evidence of physical injuries and other impacts of Appellant's crime was readily available to the Government. Therefore, we discern no substantial impairment of Appellant's defense at trial resulting from the delay.

Accordingly, we find the fourth factor strongly favors the Government.

### e. Balancing of Factors

In summary, the length of the pretrial delay and Appellant's demands for speedy trial favor Appellant; the Government's error in causing the delay also favors Appellant, although not heavily; and the absence of prejudice strongly favors the Government. We note again that these factors are not "talismanic" and must be considered together with all relevant circumstances in what is necessarily a case-by-case analysis. *Wilson*, 72 M.J. at 351 (quoting *Barker*, 407 U.S. at 533). In this case, we find the absence of cognizable prejudice coupled with the absence of intentional delay on the Government's part to be decisive.

We note Appellant has failed to identify any decision by the CAAF or by this court finding a violation of Article 10, UCMJ, in the absence of some finding of prejudice to the accused. Appellant identifies our sister court's decision in *United States v. Miller*, 66 M.J. 571, 577 (N.M. Ct. Crim. App. 2008), where the court upheld the trial judge's finding of a violation of Article 10 notwithstanding its conclusion that any prejudice to the appellant was minimal. However, there the court specially emphasized its "particular concern [with] the actions of the Government," which engaged in irregularities and neglect quite unlike the present case that apparently resulted in substantial unnecessary

delay. *Id*. at 575–77.[6] Therefore, although we agree that a showing of prejudice is not essential to finding a violation of Article 10, we do not find Appellant's case to be similar to *Miller*.

In Appellant's case, if we had found the Government acted with greater indifference to delay or intent to cause delay, we might have reached a different result. Similarly, if we had found any cognizable prejudice to Appellant, we may have found a violation of Article 10, UCMJ. However, in this case, although the Government erred, it actively prosecuted Appellant's case, and its error was not so egregious as to violate Appellant's Article 10 right to a speedy trial.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c) (2016). Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[6] In *Miller*, the court concluded:

> First, the [convening authority (CA)] directed a post-referral R.C.M. 706 [mental examination] board without seeking the military judge's order or her later concurrence. The CA then circumvented routine military chains of command by directing a specific physician to conduct the mental status exam, leaving its timely disposition without judicial or military oversight. All the while, the Government knew the appellee was in pretrial confinement for a period that eventually approached forty percent of the maximum confinement time authorized for his offenses. Finally, and most importantly, the Government has not met its burden of demonstrating that it diligently sought to follow the proceedings of the mental status examination or to expedite it when it obviously lagged. Even in the absence of a demand for speedy trial or obvious prejudice, we find that these circumstances tilt the balance against the Government.

66 M.J. at 577.